The W. E. BASSETT COMPANY, Plaintiff-Appellant,

v.

REVLON, INC., Defendant-Appellee.

The W. E. BASSETT COMPANY, Plaintiff-Appellee,

v.

REVLON, INC., Defendant-Appellant (two cases).

Nos. 61–63, Dockets 34755–34757.

United States Court of Appeals, Second Circuit.

Argued Oct. 13, 1970.

Decided Nov. 10, 1970.

Leon Singer, New York City (Blumberg, Singer, Ross, Gottesman & Gordon, and Alfred K. Kestenbaum, New York City, on the brief), for appellant.

Clifton Cooper, New York City (Beer, Richards, Haller & O'Neil, and Stewart W. Richards and Edward R. Hughes, New York City, on the brief), for appellee.

Before CLARK, Associate Justice,* LUMBARD, Chief Judge, and KAUFMAN, Circuit Judge.

LUMBARD, Chief Judge:

This is an action for trademark infringement and unfair competition in which plaintiff Bassett claims that defendant Revlon violated the Lanham Trademark Act of 1946, 15 U.S.C. § 1051 et seq., and the laws of New York by using the mark "Cuti-Trim" for its cuticle trimmer. The district court, in an opinion reported at 305 F.Supp. 581 (S.D.N.Y.1970), held Revlon liable for trademark infringement; granted a permanent injunction against Revlon's use of the mark "Cuti-Trim"; held Revlon in contempt for having procured a stay of a preliminary injunction by fraud and for having violated this court's modification of that preliminary injunction; and awarded Bassett damages in the amount of its expenses in prosecuting the contempt or, alternatively, Revlon's profits made on sales after the preliminary injunction, whichever is higher. Revlon appeals from the foregoing part of the district court's decision. However, the district court also denied Bassett's claim for an accounting of all of Revlon's profits on the trimmers marked "Cuti-Trim"; denied Bassett's claim for expenses in prosecuting the contempt in addition to, rather than as an alternative to, other damages; and referred the case to a master for a determination of the amount of Bassett's expenses in prosecuting the contempt and the amount of Revlon's profits after the preliminary injunction. Bassett appeals from this part of the district court's decision.

We affirm the district court's decision insofar as it held Revlon liable for trademark infringement, granted a permanent injunction against the use of the name "Cuti-Trim," and held Revlon in contempt. But we reverse the denial of an accounting for all of Revlon's profits from the trimmers marked "Cuti-Trim" and the denial of Bassett's claim for expenses in prosecuting the contempt in addition to the accounting; and we remand to the district court for proceedings consistent with this opinion.

I.

Plaintiff, the W. E. Bassett Company, is a leading manufacturer of manicuring implements. It sells its products under the basic trademark "Trim" and under other trademarks derived from the word trim (e. g. "Trim-clip," "Trim-pac," "Trim-ette"). "Trim" and the variants used by Bassett are the subjects of Patent Office registrations. Since 1947, Bassett has sold over 200,000,000 implements under its registered trademark "Trim." To enhance sales, and specifically for advertising and promotion of the "Trim" mark, Bassett has spent over $1,100,000 since 1954.

Defendant, Revlon, is a well-known manufacturer of beauty care and other products, including a full line of cosmetics and manicuring articles. Its products are sold under its trademark and name "Revlon." In the manicuring-implements field Bassett and Revlon are direct competitors. Although Revlon has substantial manufacturing facilities of its own, a large staff of trained personnel, and widespread warehousing facilities, it made unsuccessful efforts before the institution of this suit to acquire the business, including trademarks, of the Bassett Company.

* United States Supreme Court, retired, sitting by designation.

In January 1965, Revlon placed on the market a cuticle trimmer designated "Cuti-Trim," and sold it in packages bearing the legend "Revlon Cuti-Trim." On June 4, 1965, Bassett instituted this action for trademark infringement seeking a permanent injunction against Revlon's use of the name "Cuti-Trim." Shortly after bringing the action, Bassett moved for a preliminary injunction *pendente lite* against any further use by Revlon of the mark "Cuti-Trim" or of any similar mark. On November 19, 1965, Judge Palmieri granted such a preliminary injunction, finding *inter alia* that Bassett's "Trim" mark was valid, that it had acquired secondary meaning through its exclusive and heavily advertised use over the course of 18 years, that Revlon adopted the mark "Cuti-Trim" with full knowledge of Bassett's trademark rights and in disregard of the confusion and deception the "Cuti-Trim" mark would cause to the purchasing public and to consumers, and that there was reasonable cause to believe that Revlon had infringed and was infringing Bassett's "Trim" mark to the irreparable injury of the plaintiff.

Revlon appealed that decision to this court, and petitioned this court for a stay of the preliminary injunction pending appeal. On November 23, 1965, we granted a stay on the basis of an affidavit submitted by Revlon, stating that it had in its inventory over 80,000 fully assembled cuticle trimmers marked "Cuti-Trim," that it was impossible to eradicate the words "Cuti-Trim" without

mutilating the implements and thereby rendering them unsalable, and that therefore Revlon would sustain immediate and irreparable harm unless we granted the stay.[1] On January 3, 1966, we affirmed the preliminary injunction, but modified it to permit Revlon to market its existing stock of "Cuti-Trim"—the 80,000 implements which it had averred were fully assembled on November 19. W. E. Bassett Co. v. Revlon, Inc., 354 F.2d 868 (2d Cir. 1966).

At the trial Judge Frankel granted Bassett a permanent injunction, but denied it an accounting of all of Revlon's profits on the "Cuti-Trim" trimmers. He also found that Revlon had procured the stay of the preliminary injunction by fraud and had violated our modification and hence was in contempt; and, as stated above, he awarded Bassett partial damages. By orders dated March 12, 1970, we granted both Bassett and Revlon leave to appeal pursuant to 28 U.S.C. § 1292(b).

II.

Revlon's first claim on appeal is that it did not infringe Bassett's mark because that mark was not valid and worthy of protection, because there was no substantial likelihood of confusion between "Cuti-Trim" and Bassett's marks, and because Bassett had unclean hands thus barring an equitable relief. Judge Frankel found to the contrary on each of these assertions, and there is substantial evidence to support his findings.

1. Revlon's affidavit stated in pertinent part:

2. Unless the preliminary injunction is stayed pending appeal, defendant will sustain immediate and irreparable harm.

3. The defendant has in its inventory over 80,000 fully assembled units of its cuticle trimmer upon which there is permanently embossed the legend:

REVLON "CUTI-TRIM" U.S.A. 2070 It is impossible to eradicate the words "CUTI-TRIM" therefrom without gouging out these words from the handle of the completed implement, thereby so mutilating these cuticle trimmers as to render them defaced, second-hand products.

Thus, it would become necessary to junk all of these 80,000 units since it is impossible to separate the cutting head from the handle of the completed cuticle trimmer. These articles were all manufactured and assembled prior to the rendition of the Court's decision and in accordance with Revlon's regular production schedules. * * *

5. If the preliminary injunction is permitted to become effective pending the appeal, thereby preventing defendant of [sic] disposing of its existing inventory of cuticle trimmers in the ordinary course of trade, defendant Revlon will sustain a monetary loss in excess of $50,000.

■ The first question is whether Bassett's mark "Trim" is descriptive of the function performed by the implements or whether it is so distinctive that, on its face, it identifies the producer. If it is the latter, Bassett does not have to show that the mark acquired secondary meaning. As we stated in our previous opinion, however, "Trim" is a weak mark descriptive of the products' function and hence it can be protected only if it had acquired secondary meaning so as to identify the product with the producer. See Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495 (2d Cir. 1962); Triumph Hosiery Mills, Inc. v. Triumph International Corp., 308 F.2d 196 (2d Cir. 1962).

■ On the question of secondary meaning, Judge Frankel was persuaded by the fact that Bassett had pursued a course of steady promotion of its mark and by Mr. Justice Frankfurter's statement that the effect of such activities is often "to impregnate the atmosphere of the market with the drawing power of a congenial symbol." Mishawaka Rubber and Woolen Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203, 205, 62 S.Ct. 1022, 1024, 86 L.Ed. 1381 (1942). He therefore concluded that it was more likely than not that Bassett's endeavors had enough effect—even if subconscious—on consumers to give "Trim" secondary meaning. We agree.

■ Revlon argues that this "more likely than not" inference was not enough at trial, though it may have been enough for purposes of the preliminary injunction, and that Bassett failed to show at trial, as was necessary, that its attempt to establish secondary meaning had succeeded. In support of this contention, Revlon relies on Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938); DuPont Cellophane Co. v. Waxed Products Co., 85 F. 2d 75 (2d Cir.), cert. denied, E. I. DuPont De Nemours & Co. v. Waxed Products Co., 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443 (1936); Donald F. Duncan, Inc. v. Royal Tops Mfg. Co., 343 F.2d 655 (7th Cir. 1965); General Time Instr.

Corp. v. U. S. Time Corp., 165 F.2d 853 (2d Cir.), cert. denied 334 U.S. 846, 68 S.Ct. 1515, 92 L.Ed. 1770 (1948); and similar cases. But those cases can be distinguished from the instant case because they dealt with terms like "Shredded Wheat" or "Cellophane," which are generic, whereas "Trim," while descriptive, is not generic. Since generic marks are the actual names of the products themselves, it is necessary for the producer to show that he actually succeeded in associating the term with the source in the public's mind. But when the term is not generic but merely descriptive, an inference of secondary meaning, properly supported, seems to be enough. See Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195 (1938); Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538 (2d Cir. 1956); Spice Islands Co. v. Spice Land Products, Inc., 262 F.2d 356 (2d Cir. 1959); Miss Universe, Inc. v. Patricelli, 408 F.2d 506 (2d Cir. 1969).

■ Revlon also argues that third-party uses of "Trim" and related marks diluted Bassett's exclusive use and impaired the demonstration of secondary meaning. However, the third-party products cited by Revlon range from very different to slightly different products from Bassett's, most of the third-party products have names slightly different from Bassett's, or else the third-parties did not promote their "trim" name with as much effort and money as Bassett did. Hence, there is ample evidence to support Judge Frankel's inference that Bassett's "Trim" mark had attained secondary meaning, especially in view of the patent office's registration of that mark.

■■ Revlon's second contention is that it did not infringe Bassett's mark because there was no substantial likelihood of confusion between "Cuti-Trim" and Bassett's marks. Judge Frankel found that there was likelihood of confusion because "Cuti-Trim" was too similar to Bassett's mark, and again we agree.

Revlon relies on the fact that there is no evidence of actual confusion, that

Bassett does not now sell a cuticle trimmer, and that Revlon always displayed its famous name along with "Cuti-Trim." But, as the district court stated, a showing of actual confusion is not necessary and in fact is very difficult to demonstrate. See Miss Universe, Inc. v. Patricelli, *supra*; Maternally Yours, Inc. v. Your Maternity Shop, Inc., *supra*. Here there is certainly the *likelihood* of confusion between two names that are so similar. This conclusion is supported by the fact that the patent office twice refused to register Revlon's "Cuti-Trim" name, thereby indicating that it felt that there might well be confusion. As we said in our previous opinion, even though Bassett does not now produce a cuticle trimmer, it and Revlon are in direct competition in the manicure field and Bassett should not be hindered in its likely endeavor to market a cuticle trimmer under the "Trim" mark because Revlon has previously established an identity with that mark as to this item. Finally, Revlon's reliance on the fact that it uses its well-known name along with "Cuti-Trim" is misplaced. As Judge Frankel stated, this tactic could well show that Revlon was seeking—as it evidently did when it undertook to buy Bassett's business—to couple the benefits of the "Trim" mark with the persuasive powers of its own name, and thus the tactic could not ensure against, but might indeed promote, confusion. Cf. Armstrong Co. v. Nu-Enamel Corp., *supra*.

■ Judge Frankel found further that Revlon intentionally and fraudulently infringed Bassett's mark. He stated:

Revlon's actions and contentions are surrounded by an aura of indifference to plaintiff's rights and a smug willingness to determine unilaterally that the good will plaintiff had sought to foster could safely be treated as a nullity. These elements amount to a species of bad faith and wrongful intent. Defendant, deliberately and unnecessarily duplicating plaintiff's mark, acted in a way that was calculated to appropriate or otherwise benefit from the good will plaintiff had nurtured.

We agree. Revlon's explanation of its selection of the name "Cuti-Trim" has little credibility particularly in view of its attempt to buy Bassett's business; and Revlon used the name in the teeth of the patent office's refusal to register it. See Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657 (1894); Miles Shoes, Inc. v. R. H. Macy Co., 199 F.2d 602 (2d Cir. 1952), cert. denied 345 U. S. 909, 73 S.Ct. 650, 97 L.Ed. 1345 (1953). Cf. Kiki Undies v. Promenade Hosiery Mills, 411 F.2d 1097 (2d Cir. 1969), cert. dismissed, 396 U.S. 1054, 90 S.Ct. 707, 24 L.Ed.2d 698 (1970). The argument that Revlon's use of its well-publicized name along with "Cuti-Trim" indicates a lack of deliberate fraud is specious, for, if accepted, it would allow any company that is well enough known, to infringe a competing company's mark, especially if the competitor is small, merely by coupling its own name with the competitor's mark. See Armstrong Co. v. Nu-Enamel Corp., *supra*; Miles Shoes, Inc. v. R. H. Macy & Co., *supra*.

■ Revlon's last contention in this area is that Bassett should not be granted trademark protection because it misrepresented the origin, source of manufacture, and composition of its products. See 15 U.S.C. § 1115(b) (3). Judge Frankel examined these contentions fully and found that Bassett's alleged false representations were not intended to deceive, were not likely to deceive, and were not shown to have deceived the public, and that in any event they were not sufficiently related to the claim in suit to bar relief. We see no reason to disturb these findings.

### III.

Revlon's second claim on appeal is that the district court erred in holding it in contempt. We disagree.

■ Judge Frankel found that Revlon made a substantial misrepresentation in applying to the court in November 1965

for a stay of the preliminary injunction, when it swore that it would be impossible to eradicate the words "Cuti-Trim" on the 80,000 existing trimmers without making them unmarketable,[2] whereas a memo from its own employee, Joseph Dobkins, a few days later, stated that this could be done.[3] Judge Frankel found that the Dobkins memo accorded with the mechanical possibilities knowable to Revlon at the time. Revlon introduced much evidence to show that this was untrue and that the Dobkins memo was a mistake, but that evidence was rebutted by the testimony of Bassett's witness, Joseph Bordeau. Bordeau, who is in the metal plating, buffing, and polishing business, testified that Bassett had twice asked him to remove the "Cuti-Trim" name from Revlon's trimmers and that he had easily done so by buffing. Judge Frankel found Bordeau's refuting testimony credible, and we cannot say that his finding is clearly erroneous. At the very least, as Judge Frankel also pointed out, Revlon had the duty to call the memo to our attention before the appeal was heard.

Second, it is also clear that Revlon violated our modification of the preliminary injunction. We stated in our January 3, 1966 order that since Revlon averred on November 19, 1965 that it had 80,000 Cuti-Trim trimmers on hand which would be useless if buffed, we would permit it to market 80,000 additional trimmers, but would limit it to that amount to prevent Revlon from profiting from an inventory buildup during the stay.[4] Revlon interpreted this to mean that it could market 80,000 trimmers of the stock existing on January 3 and that those which it marketed during the stay period would not be counted. It bases its contention on our use of the words "existing" and "additional," when we knew it could have sold its whole stock before January 3. Thus altogether Revlon sold 148,000 trimmers.

Revlon's interpretation of our order is wholly unjustified, if not a deliberate distortion. Since we referred in our modification to the November 19 affidavit that Revlon had 80,000 trimmers on hand, and since we declared that our purpose was to prevent Revlon from profiting from an inventory build-up during the stay, it is plain that we meant to allow Revlon to sell the 80,000 trimmers existing on November 19, and no more. Revlon's sale of 148,000 was a blatant violation of our modification.

---

2. See footnote 1, *supra.*

3. The memo read, in significant part:
   Should our appeal of the "Cuti-Trim" injunction fail to be upheld by the Federal Court of Appeals, we will be prepared, on December 6 if necessary, to make the following revisions to the "Cuti-Trim" product, and to packaging and display materials:
   I *Product*
   A. For stock on hand, we will buff off the current gold-stamping ("Revlon Cuti-Trim USA 2070") and re-stamp without the words "Cuti-Trim." (Sample enclosed.)
   \*      \*      \*      \*      \*
   II *Packaging*
   A. On the *current* hourglass-shape self-service front card and back label (now being printed), the words "Cuti-Trim-Cuticle Trimmer" have been replaced by the words "Cuticle Trimmer" only and the copy beneath the illustration on the back label which mentioned "Cuti-Trim" has been re-set to eliminate the trademark completely.

4. We stated:
   For these reasons, we modify the preliminary injunction to permit Revlon to market up to 80,000 existing cuticle trimmers and bubble pack displays that bear the mark "Cuti-Trim."[5] However, Revlon is enjoined *pendente lite* from any other use of "Cuti-Trim" or any mark similar to the plaintiff's trademark "Trim" in the advertising or sale of manicuring implements or goods of the same general class. Revlon is also enjoined from undertaking any additional consumer advertising of the "Cuti-Trim" mark.

   5 On November 19, 1965, the date of Judge Palmieri's order. Revlon averred that it had 80,000 fully assembled, unsold cuticle trimmers bearing the "Cuti-Trim" legend. To prevent Revlon from profiting by any possible inventory building-up during the period of the stay granted by this court, we limit our modification to permit the marketing of only 80,000 additional "Cuti-Trim" implements.

**664**

## IV.

Although Judge Frankel found that Revlon was liable for infringing Bassett's mark and although he granted a permanent injunction against Revlon's use of the name "Cuti-Trim," he denied Bassett's claim for a full accounting of all of Revlon's profits from its trimmers marked with the infringing name. Instead, he granted an accounting only of Revlon's profits after the preliminary injunction as an alternative remedy for Revlon's contempt. On cross-appeal Bassett contends that since Revlon was found guilty of deliberately and intentionally infringing its mark, it is entitled to an accounting of all of Revlon's profits from the sale of the infringing article. We agree.

An accounting should be granted if the defendant is unjustly enriched, if the plaintiff sustained damages from the infringement, or if an accounting is necessary to deter a willful infringer from doing so again. Monsanto Chemical Co. v. Perfect Fit Products Co., 349 F.2d 389 (2d Cir. 1965), cert. denied 383 U.S. 942, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966); Dad's Root Beer Co. v. Doc's Beverages, Inc., 193 F.2d 77 (2d Cir. 1951); Maternally Yours, Inc. v. Your Maternity Shop, supra; Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., supra; Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629 (1916); Maier Brewing Co. v. Fleischmann Distilling Corp., 390 F.2d 117 (9th Cir. 1968), cert. denied 391 U.S. 966, 88 S.Ct. 2037, 20 L.Ed.2d 879 (1968). Revlon would be unjustly enriched here if its sales of the "Cuti-Trim" implements were attributable to its infringing use of Bassett's name. On the record as a whole, however, it appears that Revlon's sales of "Cuti-Trim" were not attributable to the infringement, since Bassett did not manufacture a cuticle trimmer during that period. Thus, there was no likelihood of immediate confusion; those who bought cuticle trimmers bought Revlon's not because of its use of Bassett's mark "Trim," but because Revlon made one and Bassett did not. Similarly, Bassett could not have sustained monetary damages from the sale of the "Cuti-Trim" articles since it did not sell a cuticle trimmer at the time; and it did not sustain damages in good will since Revlon's product was of high quality.

Nevertheless, Revlon was found to have deliberately and fraudulently infringed Bassett's mark; and as indicated above, we agree with that finding. Accordingly, a full accounting is proper as a deterrent (Monsanto Chemical Co. v. Perfect Fit Products Co., supra); and since Judge Frankel did find deliberate infringement here, he should have granted Bassett an accounting for all of Revlon's profits on the "Cuti-Trim" items, not just on those sold after the preliminary injunction. It is essential to deter companies from willfully infringing a competitor's mark, and the only way the courts can fashion a strong enough deterrent is to see to it that a company found guilty of willful infringement shall lose all its profits from its use of the infringing mark. See Monsanto Chemical Co. v. Perfect Fit Products Co., supra, 349 F.2d at 390. Revlon's course of conduct over a period of years has demonstrated a callous disregard for the rights of a competitor and for the mandates of the federal courts; consequently it is appropriate that we require it to make a full accounting. We therefore reverse the district court's denial of a full accounting, and we remand to that court for further proceedings consistent with this opinion.

## V.

The final questions in this case concern the amount of damages that Revlon should be required to pay. Judge Frankel granted Bassett its expenses in prosecuting the contempt, including counsel fees, or, alternatively, damages in the amount of Revlon's unlawful profits after the preliminary injunction, whichever is higher. Bassett contends that it is entitled to both. We agree. The reason set out immediately above—the need to deter deliberate infringers—also

indicates that we should allow Bassett its expenses in prosecuting the contempt [5] in addition to the accounting for all of Revlon's profits on the "Cuti-Trim" items.

Judge Frankel referred to a master the question of the amount of Bassett's expenses, including attorneys' fees, in prosecuting the contempt and of the amount of Revlon's net profits on the sale of just the 148,000 infringing trimmers sold in violation of the preliminary injunction. The larger of these two amounts was to be payable to Bassett. Since the question of how much of Bassett's litigation expenses were attributable to its prosecution of the contempt and the reasonableness of those expenses involve factual determinations, the reference to a master was warranted. Of course, as we have stated, the master must now determine not only the amount of those expenses and the amount of Revlon's profits since the preliminary injunction, but also the amount of *all* of Revlon's profits from all of its sales of the "Cuti-Trim" implements.

In determining the amount of Revlon's profits, it will be necessary to decide whether to allow Revlon the deductions which it claims but which Bassett disputes: manufacturing overhead, five out of six operating expenses,[6] and federal income tax. And since these are questions of law, we must establish guidelines to govern that determination. The pattern used for the partial accounting can be used for the full accounting. Subject to a determination of the reasonableness of the claimed deductions, Revlon should be able to deduct from its net sales its overhead, most of its operating expenses, and the federal income taxes on the "Cuti-Trim" items. The only one of the claimed deductions which Revlon should not be allowed is the overlabelling expense, because Revlon should have to bear the cost of correcting its own wrongdoing.

We remand to the district court, directing it to order Revlon to make a full accounting of all of its profits from sales of the infringing items and to pay Bassett the amount of Bassett's expenses in prosecuting the contempt.

Affirmed in part; reversed and remanded in part.

---

5. It is settled—and undisputed here— however, that the injured party in a trademark infringement suit under the Lanham Act may not recover attorneys' fees incurred in the action based on the infringement, even if the other party is found fully liable for that infringement. Fleischmann Distilling Corp. v. Maier Brewing, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). Hence we limit our order awarding Bassett its litigation expenses, including attorneys' fees, to that portion of its expenses which were attributable to prosecuting Revlon for contempt. The plaintiff in a civil contempt case may recover not less than the expenses, including counsel fees, which it has incurred in enforcing the disobeyed order of the court. Fleischmann Distilling Corp. v. Maier Brewing, *supra*, 386 U.S. at 718, 87 S.Ct. 1404; Feldman v. American Palestine Line, Inc., 18 F.2d 749 (2d Cir. 1927); Board of Trade of City of Chicago v. Tucker, 221 F. 305 (2d Cir. 1915).

6. Bassett disputes Revlon's deductions for 5 out of the 6 operating expenses which Revlon claimed. The disputed deductions are for marketing expense, sales expense, administrative expense, shipping expense, and overlabel expense.