E. R. SQUIBB & SONS, INC., Plaintiff,

v.

COOPER LABORATORIES, INC., and Coopercare, Inc., Defendants.

No. 81–Civ. 7237.

United States District Court,
S. D. New York.

April 2, 1982.

Cooper, Dunham, Clark, Griffin & Moran, New York City, for plaintiff; Norman H. Zivin, New York City, of counsel.

Liddy, Sullivan, Galway & Vaccaro, New York City, for defendants; Andrew V. Galway, New York City, of counsel.

**SOFAER, District Judge:**

This action was filed by plaintiff E.R. Squibb & Sons, Inc. ("Squibb") under the Lanham Act, 15 U.S.C. § 1125(a) (1976), New York General Business Law § 368–d (McKinney 1968), and state common law. Jurisdiction is based on 15 U.S.C. § 1121 (1976), 28 U.S.C. §§ 1331 & 1338 (1976), and on principles of pendent jurisdiction. Squibb seeks injunctive and monetary relief against defendants Cooper Laboratories, Inc., and its subsidiary, Coopercare, Inc., (hereinafter referred to collectively as "Cooper"), for alleged trademark infringement and unfair competition arising out of Cooper's marketing of a toothbrush under the name "Oral-B Right Angle." Squibb has proved only minimal secondary meaning for its mark "ANGLE" for toothbrushes. It has not established that Cooper attempted in bad faith to profit at Squibb's expense or to misappropriate the skill, expenditures, and labor Squibb invested in its ANGLE brush. Nor has Squibb demonstrated that Cooper's actions create more than a negligi-ble possibility of confusion among the buying public about the source of Cooper's brush. Consequently, judgment is entered in favor of defendants.

Squibb is a large corporation that markets a wide variety of health care products. Since 1938, Squibb and its predecessor have sold toothbrushes that, unlike more customary brushes with straight handles, have a handle angled similarly to a dental mirror. This style was apparently new when Squibb's predecessor introduced it. The angle in the handle purportedly permits "the brush portion to be seated firmly against the teeth in an exceptionally effective and convenient manner." Affidavit of Gordon M. Price in Support of Plaintiff's Motion for a Preliminary Injunction ¶ 4 ("Price Affidavit"). Squibb also sells a straight-handle toothbrush. It sells both the angle-handle and the straight-handle brushes in a variety of bristle styles. In packaging and promoting the angle-handle brush, Squibb has used prominently the word "ANGLE," and in connection with the straight-handle brush Squibb has used the word "STRAIGHT" in an identical manner. Squibb has registered neither "ANGLE" nor "STRAIGHT" as trademarks. Although a sizeable number of Squibb's ANGLE brushes have been sold over the years —30 million since 1956, 10 million since 1970—the brush has never attained a large percentage of the toothbrush market. Its current market share is less than one-half of one percent. Price Affidavit at ¶ 6; Affidavit of Harris Goodman in Opposition to Plaintiff's Motion for a Preliminary Injunction ¶ 2 & Ex. A ("Goodman Affidavit").

Cooper also markets a variety of pharmaceutical products. For many years, it has manufactured and sold straight-handle toothbrushes in various bristle styles under several trademarks, most successfully under the registered trademark "Oral-B." The Oral-B line is the best selling toothbrush line in the United States, currently holding approximately 19% of the market. Goodman Affidavit ¶ 2.

Over the past three years, angle-handle brushes have achieved widespread accept-

ance with consumers, due in large part to Johnson & Johnson's new brush, launched three years ago and sold under the trademark "Reach." Approximately twenty percent of all toothbrushes currently sold in this country are angle-handled, and Reach accounts for approximately 17% of the total toothbrush market. In less than three years Reach has become Cooper's major competitor. Goodman Affidavit ¶ 3.

In early 1981, in response to this rapid growth in consumer acceptance of angle-handle brushes, Cooper decided to market an angled version of its Oral-B brush. It contracted with a market research and testing company to evaluate its proposed angled brush, using as standards the leading angled brushes in the market, the Reach brush, and Lever Brother's "DX" brush, which has a minimal angle in the handle but which cuts the brush portion itself on a slant. "Oral-B Right Angle" was selected as the name for Cooper's brush after that name and several others, including "The Oral-B Brush," "The Oral-B Professional," and "The Oral-B Cleaner," were compared for consumer response. Before the consumer tests, Cooper considered and rejected the name "The Oral-B Angle," among other names. Cooper chose "Right Angle" after satisfying itself that the name suggested the "correct or proper" angle, rather than erroneously suggesting an angle of 90 degrees. Goodman Affidavit ¶ 6.

On April 7, 1981, Cooper's attorney wrote to Squibb's trademark counsel concerning possible use by Cooper of the name "Angle" for its new brush. On April 16, 1981, Squibb's counsel informed Cooper's lawyer that Squibb claimed common law trademark rights in "Angle" for toothbrushes and objected to Cooper's proposed use. Believing that Squibb in fact had no valid rights in "Angle," Cooper proceeded in October 1981 to market its Oral-B Right Angle Brush. Significant investments were made in advertising the product in November 1981, and the Oral-B Right Angle quickly assumed a small but growing share—now approximately 1.5%—of the toothbrush market. The evidence failed definitively to establish which companies or brands lost sales or market share as a result of the advent of the new product; but Squibb proved no loss in its sales.

On November 19, 1981, Squibb filed this suit, and on December 4, 1981, moved for a preliminary injunction against continued use by Cooper of the word "Angle" as part of its mark for the new brushes. Both sides presented numerous affidavits and exhibits in support and in opposition to the motion, as well as witnesses and further exhibits at a hearing. Pursuant to Fed.R.Civ.P. 65(a)(2), and with the consent of the parties, the hearing was consolidated with and treated as the trial on the merits.

The standard for unfair competition under the Lanham Act differs very little from that under New York law. *See Safeway Stores, Inc. v. Safeway Properties, Inc.,* 307 F.2d 495 n. 1 (2d Cir. 1962); *American Footwear Corp. v. General Footwear Co.,* 609 F.2d 655, 664 (2d Cir. 1979). The essence of both sources of protection is the likelihood that the consuming public will be confused about the source of the allegedly infringing product. The Second Circuit has recently summarized the fundamental principles underlying this branch of the law:

> Although at one time the law of unfair competition was limited to claims that one party had attempted to pass off his goods as those of another party, unfair competition is now held to encompass a broader range of unfair practices which may be generally described as a misappropriation of the skill, expenditures, and labor of another. "[O]ne cannot sell his product by misappropriating the good will of another through misleading the public into thinking that it is 'sponsored' by or derived from something else." Yet, liability in this area for misimpression or misappropriation has been limited. For example, one can capitalize on a market or fad created by another provided that it is not accomplished by confusing the public into mistakenly purchasing the product in the belief that the product is the product of the competitor.

*Id.* at 662 (citations omitted). Confusion also "may take the more subtle but no less significant form of an association of the alleged infringer's mark with plaintiff's, through which the new product gains unfair economic advantage." *Playboy Enterprises, Inc. v. Chuckleberry Pub. Inc.,* 486 F.Supp. 414, 419 (S.D.N.Y.1980).[1]

In assessing a claim of unfair competition predicated principally on trademark infringement, a court must first analyze plaintiff's mark to determine the scope of protection to which it is entitled. *Parrot Jungle, Inc. v. Parrot Jungle, Inc.,* 512 F.Supp. 266, 268 (S.D.N.Y.1981). In making this inquiry, "[f]irst, the mark is analyzed as a word or phrase in the abstract, without regard to its actual public acceptance." *Playboy Enterprises, Inc. v. Chuckleberry Pub. Inc., supra,* 486 F.Supp. at 420. A mark may be "generic" and therefore not entitled to protection under any circumstances; "descriptive," and therefore protected only if it has become distinctive of the plaintiff's goods in commerce—that is, only if it has acquired "secondary meaning"; "suggestive"; or "arbitrary or fanciful." Suggestive or arbitrary marks reflect a sufficient degree of inherent distinctiveness to entitle them to protection without proof of secondary meaning. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir. 1976); *Playboy Enterprises, Inc. v. Chuckleberry Pub. Co., supra,* 486 F.Supp. at 420.

The lines separating these categories "are not always bright." *Abercrombie & Fitch Co. v. Hunting World, Inc., supra,* 537 F.2d at 9. In this case, defendants argue that "Angle," as used by plaintiff is "generic," and support this contention with affidavits and testimony of purported experts in the dental field to the effect that " 'angle' is a common generic term for an angle handle toothbrush, just as the word 'straight' is a common generic term for a straight handle toothbrush." *E.g.* Affidavit of Conrad Leiser in Opposition to Plaintiff's Motion for A Preliminary Injunction ¶ 8. Squibb argues that "toothbrush" is the generic term, and that "angle" is "suggestive" of the qualities of its brush, or at least "descriptive." In *Hunting World,* the Second Circuit explained that "[a] generic term is one that refers, or has come to be understood as referring, to the genus of which the particular product is a species." *Abercrombie & Fitch Co. v. Hunting World, Inc., supra,* 537 F.2d at 9. One commentator, relying on the structure of the Lanham Act, suggests a syntactic approach—a "generic" term is a "common descriptive name," or a noun, whereas a "descriptive" term is an adjective. R. Callman, *The Law of Unfair Competition, Trademarks, and Monopolies,* § 74.4, at 52, 53 (1981 Supp.). It is unclear, however, whether angle-handle toothbrushes should be deemed a species of the toothbrush genus or a genus of which the various brands and styles of angled brushes on the market are species. Further, although "angle" plays an adjectival role in the phrase, it is not altogether clear that the phrase is not a compound worthy of treatment as a "common descriptive name."

Ultimately, whether a term is generic or descriptive as applied to a particular article should be resolved by reference to the policies for refusing any protection to some terms (deemed "generic") and for allowing the possibility of some protection to other terms (deemed "descriptive"). In *Hunting World,* the Second Circuit explained Congress' rationale:

1. Squibb, in a footnote to its brief, charges that "Cooper's use of RIGHT ANGLE in association with a toothbrush not having a 90° angle anywhere constitutes a false description under section 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125a." Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction at 22 n.* (Plaintiff's Memorandum). The argument is baseless given (1) the evidence from the study done for Cooper that a 90° angle is suggested only to 12–16% of the public, *see* Ex. D. to Goodman Affidavit, (2) Cooper's clear intent that "Right" suggests "correct or proper," a common meaning of the word, and (3) a total lack of proof suggesting that to the extent certain consumers would be confused Cooper is benefited or Squibb injured, and sufficient proof indicating that Cooper would not be benefited.

In the former case any claim to an exclusive right must be denied since this in effect would confer a monopoly not only of the mark but of the product by rendering a competitor unable effectively to name what it was endeavoring to sell. In the latter case the law strikes the balance, with respect to registration, between the hardships to a competitor in hampering the use of an appropriate word and those to the owner who, having invested money and energy to endow a word with the good will adhering to his enterprise, would be deprived of the fruits of his efforts.

*Abercrombie & Fitch Co. v. Hunting World, Inc., supra,* 537 F.2d at 10. The underlying question is: "What do the buyers understand by the word for whose use the parties are contending?" *Bayer Co. v. United Drug Co.,* 272 F. 505, 509 (S.D.N.Y.1921) (L. Hand, J.). In *Hunting World,* for example, "Safari hat" was the term in general use to describe that particular item of apparel. To confer a monopoly on the term would severely have hampered the ability of competitors to name their products. Thus it was deemed "generic." "Safari boots," however, was not so understood, and the word "Safari" as applied to boots was deemed descriptive or suggestive, since granting limited protection would not cripple competitors. *Id.* at 12.

In this case, to confer a monopoly on the word "angle" would not confer a monopoly on the product by making it impossible to name competing products. Johnson & Johnson, for example, has had great success in selling its angled brush called "Reach," which does not describe the shape of the handle but suggests a purported benefit of that shape. Plaintiff has not claimed an exclusive right to use the word "angle" descriptively, moreover, but only to its use in an identifying manner, that is, to its use as a trademark. Thus, Johnson & Johnson has been free to describe its product as "angled," *see* Plaintiff's Ex. HH, and, although it apparently has not yet done so commercially, as an "angle brush" or an "angle-handle toothbrush." Cooper, too, would be free to use the word "angle" in its

packaging and other advertising. It would therefore be able to name its angled brushes with some nondescriptive word and nevertheless succeed in conveying information sufficient to make clear to consumers the product's form.

Yet, while the sale of angled brushes would not be rendered impossible were Squibb allowed the limited exclusivity of use it seeks, the sale of such brushes by competitors would be significantly hampered by extending even such partial protection. The evidence shows that "angle" is not simply one of a number of interchangeable adjectives to describe toothbrushes with handles that are not straight. Instead, "angle" has become the common description of this category of toothbrush.

Although little direct evidence of the public's understanding of the term was presented, Cooper has shown that "angle" is a generic term for a certain dental instrument called the "prophy angle." Ex. E to Goodman Affidavit. Like the brushes at issue here, the prophy angle is angled to facilitate its use in the mouth. The term is therefore susceptible to taking on a generic meaning among dentists and other dental professionals who are indisputably an important part of and shape the toothbrush market. Moreover, the record demonstrates widespread use of "angle" in the industry to describe this category of goods. It is true that, unlike the plaintiff in *Reese Pub. Co. v. Hampton Int'l. Commun., Inc.,* 620 F.2d 7, 11–12 (2d Cir. 1980), which referred to its product as "a video buyer's guide" and nevertheless claimed protection for its purported mark "Video Buyers Guide," Squibb, like Johnson & Johnson, has never referred to its brush as an "angle-handle toothbrush." But in price lists sent to retailers Squibb sets forth categories of brushes under the headings "Angle Handle," and "Straight Handle." Exs. G, H, and I to Price Affidavit. Furthermore, Squibb has referred to "this toothbrush, . . . bent at the 'mouth mirror angle,' " Ex. A to Price Affidavit, "bent at the correct angle," Ex. BB to Reply Affidavit of Thom-

as Burckhardt to Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction (Burckhardt Affidavit), or "angled like your dentist's mirror," Ex. CC to Burckhardt Affidavit. It has stated that "[t]he angle helps you clean every surface ...." Ex. K to Price Affidavit. Cooper, in its introductory television advertising for the Oral-B Right Angle, demonstrated its belief that the public understands the word to define a category of brushes: "There are lots of angle toothbrushes." Ex. K to Goodman Affidavit. Moreover, earlier in the same commercial Cooper uses "angle" descriptively: "If you like to brush at an angle, you probably use this. It has a nice angle. But what counts is the brush at the end of the angle." Ex. K to Goodman Affidavit. Use of "angle" or "angled" by Johnson & Johnson and other entrants in the field such as Rite Aid and Avon, see Ex. J to Goodman Affidavit, Defendants' Ex. V, as well as by Squibb and Cooper, demonstrates that the word is a clear, a convenient, and in fact the most common way of referring to this category of toothbrush.

Where a term is commonly descriptive of a category of goods, extending any protection to the first user, except against intentionally predatory conduct by a competitor under state law, may be improper. The law encourages coining by merchants of pneumonic devices that will identify their products and permit goodwill to attach to them. But it does not encourage the use of the common names of products because to do so would confer an unfair advantage on the first entrant. The policy against permitting preemptive use of common names is strong, and has in some cases warranted the invalidation of marks that originally were even fanciful or suggestive, but which over time, due in large part to the first user's own efforts, became the household word for the product. See e.g., Bayer Co. v. United Drug Co., supra, 272 F. 505 ("aspirin"); American Thermos Products Co. v. Aladdin Industries, Inc., 207 F.Supp. 9 (D.Conn. 1962), aff'd sub nom., King-Sealey Thermos Co. v. Aladdin Industries, Inc., 321 F.2d 577 (2d Cir. 1963) ("thermos"). Here, "angle" has become the common word for angle

toothbrushes not because of Squibb's efforts but because Squibb chose the most descriptive word available for this type of product. Protecting such a choice after the word has become the common description of the category of goods could encourage abusive resort by initial entrants in particular markets to highly descriptive words for anticompetitive reasons.

Because Squibb has not registered "ANGLE" as a trademark, it bears the burden of proving that it is not generic as applied to the products at issue. Reese Pub. Co. v. Hampton Int'l. Comm. Inc., supra, 620 F.2d at 11. It has not met this burden. Like "Lite" or "Light" as applied to beer, Miller Brewing Co. v. G. Heileman Brewing Co., 561 F.2d 75 (7th Cir. 1977) or "Safari" as applied to hats, Abercrombie & Fitch Co. v. Hunting World, Inc., supra, 537 F.2d 4, the evidence shows that "angle" as applied to toothbrushes is the common description for this category of goods. Hence, Squibb is not entitled to trademark protection under federal law.

Even if the term is not generic, however, Squibb has failed to establish that "angle" "is somewhat more suggestive than descriptive." Squibb Memorandum at 15. Websters Third New International Dictionary defines "angle" as "the figure formed by two lines diverging from the same point or by two surfaces diverging from the same line." Therefore, no "imagination, thought and perception" is required to "reach a conclusion as to the nature of the goods"; Squibb's brush handles form an angle. As the descriptive use of the term by Squibb, Johnson & Johnson, and Cooper attests, "angle" "forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." Stix Products, Inc. v. United Merchants and Manufactures, Inc., 295 F.Supp. 479, 488 (S.D.N.Y.1968). Indeed, by stating that it has no objection to Cooper's using the word descriptively, Squibb virtually concedes that the word is primarily descriptive. Thus, even if "angle" is not considered generic, the mark belongs at best in the descriptive category. See Parrot Jungle, Inc. v. Parrot Jungle, Inc., supra, 512 F.Supp. at 268.

A descriptive mark is entitled to protection against infringement under federal law if its senior user can demonstrate two elements. First, Squibb must show that its mark has obtained "secondary meaning" in its market. To prove secondary meaning Squibb must show that "the purchasing public has come to associate ["Angle"] with goods from a single source," *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1059 (2d Cir. 1979), that is, that "the *primary* significance of the mark in the minds of the consumers is the identification of the producer, not a designation of the product," *American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 663 (2d Cir. 1979). Second, Squibb must show "a likelihood that an appreciable number of ordinarily prudent consumers are likely to be confused as to the source of goods and services defendants offer for sale." *Parrot Jungle, Inc. v. Parrot Jungle, Inc., supra*, 512 F.Supp. at 268 (citing *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1132 (2d Cir. 1979)). Alternatively, under the law of New York, if a defendant establishes a likelihood of confusion, relief may be appropriate without proof of secondary meaning where "bad faith predatory conduct" on the part of the defendant is shown. *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 953 (2d Cir. 1980); *American Footwear Corp. v. General Footwear, Inc., supra*, 609 F.2d at 662.

The following factors are relevant in determining whether a mark has obtained secondary meaning:

(1) the duration of plaintiff's exclusive use of its mark, (2) the nature and extent of plaintiff's advertising and promotion of its mark, (3) the extent to which plaintiff's business has, other than by its own efforts, come to the attention of the consuming public, (4) plaintiff's patronage record, and (5) defendants' conscious copying of plaintiff's mark.

*Parrot Jungle, Inc. v. Parrot Jungle, Inc., supra*, 512 F.Supp. at 269. Squibb argues that "ANGLE" has strong secondary meaning. It points out that, as in *Parrot Jungle*, it exclusively used the mark for toothbrushes for over forty years. Squibb grants that it ceased advertising the brush some ten years ago, but argues that its advertising until 1970 was significant, and asserts that it intends to resume significant advertising soon. It established total sales of 30 million brushes over the last 25 years, and estimated sales of 600,000 units in 1981 alone. Squibb further points to uncontested evidence that Cooper was aware of Squibb's use of ANGLE before it chose "Oral-B Right Angle" as its mark, and charges that this demonstrates conscious copying, which should give rise to a presumption of secondary meaning. *Parrot Jungle, Inc. v. Parrot Jungle, Inc., supra*, 512 F.Supp. at 270. Finally, Squibb submitted a number of letters from customers about the Squibb ANGLE brush, which, it claims, establish that members of the public consider "ANGLE" to indicate Squibb as the source.

Squibb's evidence suggests at most a small measure of secondary meaning, arguably entitling ANGLE to a very narrow range of protection. *See McGregor-Doniger Inc. v. Drizzle, Inc., supra*, 599 F.2d at 1133. The evidence, considered in light of all relevant factors, reveals that Squibb's mark is weak. Squibb's exclusive use of the mark over many years is merely the result of the fact that it alone marketed angle-handle brushes for almost all that period. Squibb's advertising and promotion of the mark has been minimal and sporadic, and the ten year lapse preceding Cooper's entry into the market has further vitiated any claim to strength. This factor alone distinguishes this case from *Parrot Jungle* and *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656 (2d Cir. 1970), relied upon by Squibb, where descriptive marks had been strengthened by pursuit of "a steady promotion of [the] mark ... 'to impregnate the atmosphere of the market with the drawing power of a congenial symbol.'" *Id.* at 661 (quoting *Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co.*, 316 U.S. 203, 205, 62 S.Ct. 1022, 1023, 86 L.Ed. 1381 (1942) (Frankfurter, J.)). This case is also unlike *Dreyfus Fund, Inc. v. Royal Bank of Canada*, 525 F.Supp. 1108 (S.D.N.Y. 1981), where plaintiff's "lion" trademark

was protected notwithstanding discontinuance of television advertising for the five years preceding suit. *Id.* at 1114–15. In that case a suggestive, not descriptive, mark was at issue, *id.* at 1112, plaintiff continued to use the mark extensively in other media during the television lapse, the time period of the lapse was half as long as the instant period, and the prior advertising campaign had been "immensely successful," both in generating patronage and in identifying plaintiff with the lion. *Id.* at 1113. Here, Squibb has discontinued significant advertising in all forms, has never generated wide recognition for "ANGLE," as reflected in part by its chronically small market share, and failed in its earlier advertising to establish secondary meaning for "ANGLE."

Indeed, Squibb's promotional efforts in the years preceding 1970 seem to have nullified any chance it might have had to generate origin-identification with its descriptive mark. In some of the few old advertisements offered by Squibb to establish its advertising efforts the ANGLE brush is included as subordinate in importance to the principal products promoted, "Squibb Tooth Powder," or "Squibb Dental Creme." Ex. J to Price Affidavit; Ex. BB to Burckhardt Affidavit. In others, although the ANGLE brush is the principal product promoted, the most prominent trademark displayed—and therefore the primary origin-indicating mark—is the far stronger housemark, "Squibb," not "ANGLE" itself. Exs. E, K & L to Price Affidavit. Moreover, the packaging itself—Squibb's only promotional device since 1970—although making "ANGLE" its most prominent feature, is not calculated to generate source-identification by the public. While the housemark, and several of the bristle styles, bear indications that those words are trademarks, "ANGLE" is accompanied neither by the customary "R" nor "TM." It appears in precisely the same style as the word "STRAIGHT" on Squibb's straight-handle brushes, which would often appear side-by-side with the angled brushes on druggists' shelves. And although Squibb unabashedly maintains it has trademark rights in the word "STRAIGHT," it is highly unlikely that consumers consider that very common, purely descriptive word to indicate origin. The impression given by the two brushes in tandem is that "STRAIGHT" and "ANGLE" are merely descriptive, indicating the different handle styles of the brushes inside. This is also the impression given by the price lists provided to retailers, listing the various "angle handle" and "straight handle" brushes available at wholesale. Given this promotional history, and Squibb's consistently descriptive use of "angle" in its advertising copy, "there would be no apparent reason for a consumer to assume" that every brush bearing the word "angle" is marketed by, sponsored by, or associated with Squibb. *See American Footwear Corp. v. General Footwear Co., supra,* 609 F.2d at 662. Moreover, Squibb has failed to indicate any notoriety its brush has received beyond its limited sales and infrequent advertising. *See McGregor-Doniger, Inc. v. Drizzle, Inc., supra,* 599 F.2d at 1132–33 & n.4; *Parrot Jungle, Inc. v. Parrot Jungle, Inc.,* 512 F.Supp. at 270.

Squibb's patronage record also fails to support its claim of strong secondary meaning. Although it has sold millions of toothbrushes over the last quarter-century, its sales of ANGLE have never amounted to a significant portion of the market. Its current share is less than one-half of one percent, placing it far below the leading brands, Oral-B with approximately 19%, Reach with approximately 17%, and Pepsodent Adult with approximately 15%. Moreover, the letters from consumers on which Squibb relies, although reflecting that some of Squibb's customers are very loyal and do prefer Squibb's ANGLE brushes to those of competitors, do not support an inference that "ANGLE" itself is considered to indicate source. Virtually every letter uses the housemark to name the brush, referring to it for example as the "Squibb Angle Toothbrush" or the "Squibb Angle Type." Many use "angle" only in combination with the names of particular bristle styles, such as the "Angle Hard," the "Squibb 1600 firm angle," the "Squibb 1600 Angle (gentle),"

the "1600 Angle," etc. Some correspondents even fail to capitalize the initial "a" in the word. *See* Ex. AA to Burckhardt Affidavit.

On the basis of the evidence presented, although "ANGLE" may have achieved some minimal secondary meaning with some consumers, the housemark "SQUIBB" is by far the primary indication of source. "ANGLE" is considered by the public as principally descriptive of the shape of the handle, and thus indicative of one particular style of Squibb brush.

Squibb argues, however, that it has established bad faith predatory conduct on the part of Cooper, which gives rise to a presumption of secondary meaning, *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1060 (2d Cir. 1979), and under state law suffices with a showing of likelihood of confusion to establish unfair competition even in the absence of secondary meaning, *Perfect Fit Industries, Inc. v. Acme Quilting Co., supra*, 618 F.2d at 953. Cooper was concededly aware of the Squibb ANGLE brush early in 1981, and nevertheless proceeded to market its Oral-B Right Angle. Knowledge of prior use "has often been relied upon as evidence of bad faith and an intention to trade upon another's good will." *Dreyfus Fund, Inc. v. Royal Bank of Canada, supra*, 525 F.Supp. at 1121 (quoting 2 J. McCarthy, *Trademarks and Unfair Competition* § 23:33, at 107 (1973)). But knowledge of prior use alone does not amount to a bad faith attempt to capitalize on the skill, expenditures, and labor of the first user. *See American Footwear Inc. v. General Footwear Co., supra*, 609 F.2d at 662–63. In *Dreyfus Fund*, and in *A. T. Cross Co. v. Jonathan Bradley Pens, Inc.*, 470 F.2d 689 (2d Cir. 1972), relied on by Squibb, the marks at issue were arbitrary or suggestive. In those cases, therefore, a "wrongful intent [was] easy to infer [because] the defendant knew of the plaintiff's mark, had freedom to choose any mark, and 'just happened' to choose a mark confusingly similar to plaintiff's mark." *Dreyfus Fund, Inc. v. Royal Bank of Canada, supra*, 525 F.Supp. at 1121 (quoting J. McCarthy,

*supra*, § 23:33, at 107); *A. T. Cross Co. v. Jonathan Bradley Pens, Inc., supra*, 470 F.2d at 692. Here, "angle" is descriptive of the products at issue, and is used descriptively by Squibb and Johnson & Johnson as well as by Cooper. While Squibb suggests that "bent" or "cut on a bias" or "slant" would serve as well, the latter two are at best suggestive of the shape, and both "bent" (which may imply that the article is misshapen) and "bias" have negative connotations making them less attractive descriptions than "angle." Squibb, Johnson & Johnson, and Avon all use "angle" or "angled" descriptively. Thus Cooper did not "just happen" to choose "angle." Good reasons, wholly unrelated to Squibb's prior use, support Cooper's choice. In choosing a highly descriptive mark, Squibb acted at its peril; where a second comer chooses a descriptive word to name its product, more than simple knowledge of the prior use is needed to show an intent to misappropriate goodwill.

Squibb has no other evidence suggesting a purpose on Cooper's part to confuse the public as to the source of its brush or to associate its brushes with Squibb. *Flexitized, Inc. v. National Flexitized Corp.*, 335 F.2d 774 (2d Cir. 1964), on which Squibb relies, lends it no support. Defendants there continued to produce a product bearing plaintiff's name after breaching a distributor agreement with plaintiffs and in breach of a clear fiduciary duty. *Id.* at 782. Although Cooper's Owens Brush Division has manufactured ANGLE brushes for Squibb, as well as brushes for many other companies, Squibb does not argue that a fiduciary relationship arising from contract was thereby created. Nor has Cooper acted as the defendant did in *Wyatt Earp Enterprises, Inc. v. Sackman, Inc.*, 157 F.Supp. 621 (S.D.N.Y.1958), by taking advantage of a prior licensing agreement with plaintiff, and using the word "official" in connection with the product, thus certainly intending to engender confusion. Nor has Cooper sent misleading correspondence to retailers, as defendants did in *A. T. Cross Co. v. Jonathan Bradley Pens, Inc., supra*, 470

F.2d 689, or appropriated plaintiff's slogans or advertising materials, or instructed retailers to pronounce its name in a deceptive manner as was the case in *Grotrian, Helffereich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 523 F.2d 1331 (2d Cir. 1975), and *Parrot Jungle, Inc. v. Parrot Jungle, Inc.*, supra, 512 F.Supp. 266. Cooper has not used a trade dress similar to Squibb's. *Compare Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950 (2d Cir. 1980); *RJR Foods, Inc. v. White Rock Corp.*, supra, 603 F.2d 1058; *Venetianaire Corp. v. A & P Import Co.*, 429 F.2d 1079, 1081–82 (2d Cir. 1970). Indeed, Cooper's choice of name, which includes the additional word "Right" and its own housemark, its packaging, which in no way resembles Squibb's, and its brush, which is strikingly different from Squibb's in appearance, strongly suggest the absence of an intention to deceive. Moreover, unlike virtually every case where an intent to confuse was inferred, *e.g., Perfect Fit Industries, Inc. v. Acme Quilting Co.*, supra, 618 F.2d 950; *RJR Foods, Inc. v. White Rock Corp.*, supra, 603 F.2d 1058; *Grotrian, Helffferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, supra, 523 F.2d 1331; *W. E. Bassett Co. v. Revlon, Inc.*, supra, 435 F.2d 656; *Dreyfus Fund, Inc. v. Royal Bank of Canada*, supra, 525 F.Supp. 1108; *Parrot Jungle, Inc. v. Parrot Jungle, Inc.*, supra, 512 F.Supp. 266; *Playboy Enterprises, Inc. v. Chuckleberry Pub. Co.*, supra, 486 F.Supp. 414; *Wyatt Earp Enterprises, Inc. v. Sackman, Inc.*, supra, 157 F.Supp. 621, plaintiff's mark was not a well known or highly successful one with broad and well established appeal in the marketplace. Squibb's ANGLE had far less visibility and sales than Cooper's Oral-B brand itself, and had been in the marketplace for forty years without gaining a significant market share. While Squibb is of course protected against willful usurpation of its goodwill no matter what its share of the market, the fact that its ANGLE brush had so small a following makes it less likely that Cooper intended to misappropriate Squibb's goodwill. Finally, Cooper's inquiry to Squibb about its position on the validity and scope of its purported trade-

mark does not suggest bad faith as Squibb argues. Cooper's counsel advised Cooper that in his view Squibb had no valid trademark rights in the word. This advice was reasonable given the generic or highly descriptive nature of the word and Squibb's minimal promotion. Cooper was entitled to and did follow that advice in good faith.

Rather than intending to misappropriate—or even to appropriate—Squibb's market share, Cooper's intent in marketing "Oral-B Right Angle" was, as Mr. Goodman testified, to cut into Reach's rapidly growing market share. "Right Angle" was selected because it described the shape of the handle—the same basic shape as Reach's—and to suggest that Cooper's angled brush was the "right" one to buy. Cooper chose "angle" to maximize the likelihood that Reach customers who preferred the angle shape would buy Cooper's angle brush, to make clear the difference between its new brush and its popular straight-handle brushes, and to minimize the possibility that Oral-B straight-handle users would switch, thus eroding Cooper's own straight-handle share. Further evidence of Cooper's good faith appeared at trial, when it agreed to further distinguish its brush from Squibb's by enlarging its housemark on its packaging. Instead of being slightly smaller than the words "Right Angle," Cooper has agreed hereafter to display "Oral-B" in lettering of the same size as "Right Angle."

Despite the weakness of its mark, since Squibb has demonstrated some secondary meaning, it might be entitled to some appropriate relief were a likelihood of confusion demonstrated, even in the absence of bad faith. *A. T. Cross Co. v. Jonathan Bradley Pens, Inc.*, supra, 470 F.2d at 692. Squibb argues that confusion as to source is likely in several ways:

(1) The public will mistakenly believe that Right Angle toothbrushes are ANGLE toothbrushes bearing a slightly different brand name and perhaps being an improved version.

(2) The public, if it notices the difference in the brand name, will believe that there is a corporate association or sponsorship relationship between Squibb and Cooper.

(3) Consumers may inadvertently or carelessly pick-up Right Angle toothbrushes when they intend to buy ANGLE toothbrushes.

(4) Toothbrushes frequently are recommended by dentists to their patients, and consumers will have an imperfect recollection of the recommended brand.

(5) Some unscrupulous retailers will pass-off Right Angle toothbrushes to inattentive consumers requesting ANGLE toothbrushes, because they may make a larger profit on the sale of Right Angle toothbrushes.

■ Whether there is a likelihood of confusion is essentially a factual matter, but a number of factors guide the fact-finding process. *RJR Foods, Inc. v. White Rock Corp., supra,* 603 F.2d at 1061. These factors include:

(1) the strength of the plaintiff's mark;

(2) the defendant's purpose in adopting its mark;

(3) the degree of similarity between the marks;

(4) the degree of similarity between the products;

(5) the competitive proximity of the products;

(6) actual confusion; and

(7) the degree of care likely to be exercised by consumers.

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons, supra,* 523 F.2d at 1336; *e.g., Playboy Enterprises, Inc. v. Chuckleberry Pub. Co., Inc., supra,* 486 F.Supp. at 419.

■ Squibb emphasizes that the two products are in direct proximity in the market, competing for essentially the same retailers and ultimate consumers. Both products are angle-handle brushes. Although the suggested retail prices of the two brushes are significantly different—Cooper's brush bearing a suggested price approximately a dollar higher than Squibb's—the wholesale prices are only pennies apart and retailers are free to charge whatever price they see fit. Squibb also argues that the likelihood of confusion is enhanced by the buying habits of the public. Toothbrushes are a low cost item, and shoppers are unlikely to linger in purchasing them; "impulse" may play a lesser role in toothbrush purchases than in purchases of adult magazines, *see Playboy Enterprises, Inc. v. Chuckleberry Pub. Co., supra,* 486 F.Supp. at 427, but consumer sales of toothbrushes may fairly be characterized as "impulse buying."

An appraisal of all the relevant factors establishes, however, that no likelihood of confusion has been proved. "The strength of a mark refers to its distinctiveness, 'or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source.'" *Playboy Enterprises, Inc. v. Chuckleberry Pub. Co., supra* 486 F.Supp. at 419–20 (quoting *McGregor-Doniger, Inc. v. Drizzle, Inc., supra,* 599 F.2d at 1131). As discussed above, Squibb's "ANGLE" mark is very weak, even if it is not generic, and Cooper's purpose in adopting its mark was neither to trade on Squibb's goodwill nor to associate its brush with Squibb.

Further, the marks at issue and the overall appearance of the two products are quite different. "[W]here common words of the English language are used as trademarks a slight difference may sometimes be sufficient to avoid confusion," particularly where, as here, plaintiff's mark is weak. *Playboy Enterprises, Inc. v. Chuckleberry Pub. Co., supra,* 486 F.Supp. at 421, and cases cited. The differences here are more than slight. Squibb's packages bear prominently the single word "ANGLE," invariably accompanied in a readily visible place with its housemark. Cooper has also added the word "Right." Moreover, Cooper combined its own well known trademark "Oral-B" with "Right Angle" to create the compound mark "Oral-B Right Angle."

Squibb argues on the basis of *W. E. Bassett Co. v. Revlon, Inc., supra,* 435 F.2d 656, *A. T. Cross, Inc. v. Jonathan Bradley Pens, Inc., supra,* 470 F.2d 692, and *E. R. Squibb & Sons, Inc. v. Premo Pharmaceutical Labs., Inc.,* 195 U.S.P.Q. 545 (S.D.N.Y.1977), that "Oral-B" and "Right" are irrelevant to

the likelihood of confusion. But in *Premo,* the Court found that the defendant had intentionally copied plaintiff's trade dress in order to enhance sales of its product; adding the housemark did not eliminate the likelihood of confusion. In *Bassett* and *Cross,* as discussed above, plaintiffs' marks were very strong as a result of plaintiffs' leading place in the relevant markets and their years of consistent advertising. This case, by contrast, is similar to *McGregor-Doniger, Inc. v. Drizzle, Inc., supra,* 599 F.2d at 1134–36. In that case, the plaintiff manufactured a jacket under the mark "Drizzler" and defendant followed with a jacket called "Drizzle." Confusion was unlikely in part because "the fact that only one mark generally appear[ed] in close conjunction with the red plaid McGregor name increase[d] the likelihood that the public, even when viewing the marks individually, [would] not confuse the two." *Id.; see American Footwear Corp. v. General Footwear Co., supra,* 609 F.2d at 662; *Abercrombie & Fitch Co. v. Hunting World, Inc., supra,* 537 F.2d at 13. Here, "Oral-B" minimizes the potential for confusion not only because it is perhaps the best known toothbrush trademark in the country, but also because "Squibb" always appears with "ANGLE" on Squibb's packages and products, and is a stronger indication of product source than "ANGLE."

Cooper has also chosen a trade dress entirely dissimilar from Squibb's. Squibb usually sells its brushes in hard plastic packages; Cooper uses only cardboard packages, with a photograph of its brush—which is strikingly different in appearance from Squibb's. While "Angle" appears on Squibb's packages in all block, capital letters, "Right Angle" appears with only the initial letters capitalized and all the letters appear in a typeface distinguished by curved rather than straight-line letters. On Squibb's packages, "ANGLE" is printed diagonally, slanting upward from left to right if the package is held, as it is meant to be, vertically; Cooper's "Oral-B Right Angle" is printed parallel to the top of the box, if the package is held, as it is meant to be, horizontally. Differences in typeface of the two marks, although not dispositive, are a proper factor in judging the likelihood of confusion, and the overall context in which the marks generally appear is of basic significance to the overall impression made on the public. *E.g., RJR Foods, Inc. v. White Rock Corp., supra,* 603 F.2d at 1060; *McGregor-Doniger, Inc. v. Drizzle, Inc., supra,* 599 F.2d at 1133–34; *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons, supra,* 523 F.2d at 1339. In this case the marks and trade dress are sufficiently different visually, and the marks sufficiently different aurally, *see Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons, supra,* 523 F.2d at 1340, to eliminate any potential confusion, particularly considering the weakness of plaintiff's mark.

Finally, although instances of actual confusion are difficult to prove and are unnecessary to establish a likelihood of confusion, Squibb admittedly has failed to show even a single instance of actual confusion. *McGregor-Doniger, Inc. v. Drizzle, Inc., supra,* 599 F.2d at 1136. Given the weakness of plaintiff's mark, Cooper's lack of bad intent, and, most important the substantial differences in the marks and in the products' overall appearance, the likelihood of confusion even in an "impulse" market is negligible. Therefore, even assuming that "ANGLE" as a very weak mark may be entitled to minimal trademark protection, Squibb has failed to demonstrate that Cooper's mark will generate undue confusion as to the source of "Oral-B Right Angle." The Clerk is ordered to enter judgment for defendants Cooper Laboratories, Inc., and Coopercare, Inc., with costs, but no fees.

SO ORDERED.