**CUISINARTS, INC., Plaintiff,**

v.

**ROBOT–COUPE INTERNATIONAL CORPORATION, Defendant.**

**No. 81 Civ. 731–CSH.**

United States District Court,
S.D. New York.

Feb. 16, 1984.

Goldenbock & Barell, New York City, for plaintiff; Arthur M. Handler, Robert S. Goodman, Michael M. Meadvin, New York City, of counsel.

Alexander & Green and Dewey, Ballantinie, Bushby, Palmer & Wood, New York City, for defendant; Robert E. DeRight, Jr., Kenneth F. Fagan, and Thomas V. Heyman, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Six motions await decision in this much litigated case which forms one front in a bitter commercial war between the domestic marketers of two high quality food processors. The combatants are plaintiff Cuisinarts, Inc. and defendant Robot-Coupe International Corp. (hereinafter "RC–I"). The processors they market are called the "Cuisinart" and the "Robot-Coupe" respectively. This Court has announced numerous opinions, oral and written, during the course of the litigation. One is reported at 509 F.Supp. 1036 (S.D.N.Y.1981). Familiarity with all is assumed in what follows.

The six pending motions are:

(1) RC–I's motion under Rule 56, F.R. Civ.P., for partial summary judgment dismissing Cuisinarts' claim for monetary relief and attorney's fees.

(2) Cuisinarts' motion to amend its complaint so as to add as a party defendant Robot-Coupe S.A., a French company, the manufacturer of the Robot-Coupe food processor, and RC–I's corporate parent.

(3) Cuisinarts' motion for an order striking RC–I's third through ninth affirmative defenses.

(4) Cuisinarts' objections to the order of Magistrate Gershon vacating depositions of RC–I's French directors.

(5) Cuisinarts' objections to the magistrate's ruling which refused to compel RC–I to answer a particular interrogatory.

(6) Cuisinarts' motion for a protective order staying discovery on RC–I's affirmative defenses and counterclaims.

I will not describe the prior litigation in detail. It is sufficient for present purposes to say that the parties have mounted elaborate advertising campaigns in efforts to keep or capture the American market. Two of RC–I's ads form the subject matter of this case. Cuisinarts claimed that those particular ads were false and misleading in violation of sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114, 1125. Other RC–I ads were not challenged by Cuisinarts. As to the two ads in question, Cuisinarts sought injunctive relief. It also sought to recover RC–I's profits, an accounting for that purpose, the cost of reparative advertising, and attorney's fees under section 35, 15 U.S.C. § 1117. Finally, pendent claims are asserted under New York statute and common law.

I preliminarily enjoined the two ads in question, while denying a preliminary injunction, broader in scope. Those ads have not been republished. RC–I has represented, first to Magistrate Gershon and now to me, that it would be willing to have those injunctions made permanent. Within that context, RC–I moves for partial summary judgment dismissing Cuisinarts' monetary claims. If that motion is well founded the litigation is at an end and the other pending motions mooted. I shall therefore first address RC–I's partial summary judgment motion.

The motion is made after very considerable discovery. The presidents of Cuisinarts and RC–I have been lengthily deposed. So have RC–I's vice president, executives of its advertising agencies, and attorneys who advised RC–I on possible unfair competition liability in connection with the advertising campaign in general and those ads in particular. Cuisinarts has responded to RC–I's written interrogatories.

On this record, RC–I argues that Cuisinarts' claims for monetary damages and

attorney's fees fail as a matter of law. Two reasons are given. The first is that trademark counsel reviewed, edited and approved the ads before they were published. The second is that Cuisinarts "is not able to establish either a loss of profits or sales and thus has not suffered any actual harm." RC–I main brief at 12.

The factual premise for this second proposition is apparently conceded. Cuisinarts makes no claim for lost profits or sales in its answers to interrogatories; and its surreply memorandum remarks at 11: "Since Cuisinarts does not base its damage claims on decreased sales, Cuisinarts' sales figures are irrelevant." But Cuisinarts asserts money claims, nonetheless. They are for the cost of advertising to repair the confusion engendered by RC–I's infringing ads; RC–I's profits; and Cuisinarts' attorney's fees and costs.

■■■ RC–I argues that because Cuisinarts claims neither a loss of profits nor of sales, "no basis exists for monetary relief." Main brief at 12. I cannot accept that submission. It is well settled that monetary relief, in a broader sense, may be awarded in the absence of actual damages suffered by the trademark owner. Specifically, Cuisinarts claims RC–I's profits. "The awarding of profits is designed to be a deterrent to those who would wilfully infringe a competitor's mark." *Vuitton et Fils, S.A. v. Crown Handbags*, 492 F.Supp. 1071, 1077 (S.D.N.Y.1979), *aff'd*, 622 F.2d 577 (2d Cir.1980), citing *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656 (2d Cir.1970). "In a proper case the plaintiff may also be able to recover defendant's profits without demonstrating his own actual damages." *Vuitton, supra*, at 1077, citing *Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.*, 308 F.Supp. 489 (S.D.N.Y.1969).

■ The question therefore arises whether this is a "proper case" for the monetary relief Cuisinarts seeks. That is a determination for the Court as Chancellor, since section 35 of the Lanham Act, 15 U.S.C. § 1117, provides that Cuisinarts' remedies are "subject to the principles of equity." [1] The circumstances of each case must be considered. A defendant's infringement of plaintiff's trademark does not automatically entitle plaintiff to an accounting, even where (as here) the parties are direct competitors. *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947); *Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co.*, 349 F.2d 389, 393 (2d Cir.1965). The trial court's task is to "endeavor to adopt its relief to the general equities of the particular situation, as nearly as is possible to do so, in designing relief for unfair competition . . ." *Dad's Root Beer v. Doc's Beverages*, 193 F.2d 77, 82–83 (2d Cir.1951) (Clark, Ct.J.), quoted by Chief Judge Lumbard in *Monsanto, supra*, at 394.

Judge Lumbard's later opinion in *W.E. Bassett Co. v. Revlon, Inc., supra*, establishes the guidelines for trial courts' discretion in this circuit. *Bassett* holds:

> "An accounting should be granted if the defendant is unjustly enriched, if the plaintiff sustained damages from the in-

1. The section reads in its entirety:
   "When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of section 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party."

fringement, or if an accounting is necessary to deter a willful infringer from doing so again." 435 F.2d at 664.

These justifications for an accounting are stated in the disjunctive. Any one will do.

Cuisinarts does not claim lost sales or profits. Therefore it has not sustained damages, and the second of the three reasons for an accounting does not arise.[2] I am left with the first and third rationales for an accounting: the defendant's unjust enrichment, and the need to deter a wilful infringer. The parties focus most of their arguments upon the latter proposition. I address it first.

In doing so, I am led directly to what counsel refer to in the briefs as RC–I's "advice of counsel" defense.

RC–I says, in essence, that it knew Cuisinarts would closely scrutinize RC–I's competitive advertising campaign. RC–I intended to make use of the Cuisinarts name and trademark, without the latter's consent. Such use does not violate the Lanham Act, so long as misrepresentations are not made. *Smith v. Chanel, Inc.*, 402 F.2d 562, 563–64 (9th Cir.1968); *Societe Comptoir De L'Industrie Cotonniere Etablissements Boussac v. Alexander's Department Stores, Inc.*, 299 F.2d 33, 36 (2d Cir. 1962). But the subject is obviously sensitive. RC–I accordingly retained general and trademark counsel to pass upon the legality of each ad which mentioned Cuisinarts. Counsel questioned RC–I executives on the factual accuracy of the advertising copy. Counsel sent further telexes of inquiry to Robot-Coupe, S.A. executives in France. Counsel sat at the side of RC–I's advertising agency creative staff, joggling their elbows and insisting upon text changes when they did not approve of what they saw. No RC–I ad was published until counsel had, in Cuisinarts' accurate word, "vetted" it for legal probity. In these circumstances, RC–I contends, it cannot in law be regarded as a wilful, deliberate,

fraudulent infringer of the Cuisinarts trademark.

Cuisinarts replies that the Court found the ads to be facially false: that it is not simply a question of counsel's opinion about "the legal significance of words and phrases," as RC–I pretends (RC–I reply brief at 2). Secondly, Cuisinarts says that the issue of RC–I's intent does not lend itself to disposition by summary judgment.

█ It is true that I found the two ads in question to be facially and factually false. One is known as the "It Used To Be Pronounced Cuisinart" ad. The other is the "scoreboard" ad: "Robot-Coupe: 21/Cuisinart: 0." I have previously given the reasons for my findings, and do not repeat them here. But it does not follow from those findings alone that RC–I wilfully and deliberately infringed. RC–I's counsel concluded that the ads were not misleading. No one suggests that counsel did not hold that opinion sincerely and in good conscience. I do not agree with counsel's reasoning, but that is a different matter. The ads are misleading because a district judge has said that they are. If an appeal had been taken and the circuit judges—or two of them, for that matter—had disagreed, then the ads would have instantly shed their misleading character and become pure as the driven snow. Such are the practical realities of the law. "We are not the Supreme Court because we are infallible," said Justice Frankfurter. "We are infallible because we are the Supreme Court." This Court's finding that the statements were false and misleading is not sufficient in and of itself to brand RC–I as a wilful and deliberate infringer.

Whether RC–I should be so branded is the key issue on this aspect of the case. Should it be decided at this stage of the record? Cuisinarts says no, and cites recognized authority cautioning against summary judgment. I respect that authority, but also recognize that Rule 56 is not a dead letter. One may fairly generalize by

---

**2.** I do not lose sight of Cuisinarts' claim for the cost of reparative advertising. That cost may be regarded as damages caused by the infringe-

ment; but in the present context of Cuisinarts' entitlement to an accounting I regard it as *de minimis.*

saying that summary judgment is often inappropriate, but sometimes proper. Each case turns on its own circumstances.

A significant circumstance in the case at bar is the amount of discovery that has been accomplished. As noted *supra,* all the American actors in the drama have been deposed, including counsel, required for that purpose to assume unfamiliar roles. Myriad documents have been produced: telexes, memoranda, letters, drafts. To the extent that it is possible to recreate through testimony and exhibits the conception, gestation period, delivery, and first faltering steps of these ads, this record does so. I do not see that a trial will tell me more than I know now. The issue is ripe for decision.

I may start with the familiar principle that taking counsel's advice does not *ipso facto* and in all circumstances shield the actor from the consequences of his act. Full and accurate disclosure must be made to counsel. Otherwise counsel's opinion is not properly founded and of no professional value. Counsel's advice must be timely requested, and honestly relied upon in shaping one's conduct. Otherwise counsel's advice is a sham, a smokescreen set up to mask the actor's real intent. These truisms may be derived from many of the cases Cuisinarts cites; see, *e.g., Nelson v. J.H. Winchell & Co.,* 203 Mass. 75, 89 N.E. 180, 187 (Sup.Ct.1909) (defendants' reliance upon counsel's advice rejected where "it does not appear that they communicated to their counsel all the facts upon which that advice should have been based...."). A useful analogy appears in the standard charge given to criminal juries about the

advice of counsel, where *mens rea* is at issue.[3]

But if a client seeks qualified counsel's advice in a timely manner, makes adequate disclosure to counsel, receives counsel's opinion and then acts upon it, surely the Chancellor must pause before branding the client as a wilful, deliberate, fraudulent commercial thief: those being the epithets which courts apply to a trademark infringer who is condemned to an accounting for profits.

*Monsanto, supra,* and *Bassett, supra,* the leading Second Circuit cases, are illustrative. In each case the infringing conduct was wrong, blatant, and totally inexcusable. In *Monsanto* defendant was a manufacturer of mattress pads. Plaintiff Monsanto produced an acrylic fiber which it marketed under the registered trademark "Acrilan." Defendant deliberately infringed that mark by selling mattress pads falsely labelled as acrilan-filled. The Court of Appeals' opinion describes a protracted course of prevarication and outright lies by the defendant in connection with this infringement. Furthermore, the proof disclosed that on at least three prior occasions the defendant had carried out schemes similar to its misuse of the Monsanto trademark, victimizing other trademark owners who were then required to sue defendant. Judge Lumbard said succinctly of the defendant: "It may be said to be a commercial racketeer." 349 F.2d at 396. The Second Circuit, holding that the district court should have coupled a permanent injunction with an accounting, stated:

---

3. The standard jury instruction in criminal cases appears in Devitt and Blackmar, *Federal Jury Practice and Instructions* (3rd ed. 1977) at § 14.12:

"The defendant claims that he is not guilty of willful wrongdoing because he acted on the basis of advice from his attorney.

"If the defendant before taking any action sought the advice of an attorney whom he considered competent, in good faith and for the purpose of securing advice on the lawfulness of his possible future conduct, and made a full and accurate report to his attorney of all material facts of which he has the means

of knowledge, and acted strictly in accordance with the advice of his attorney given following his full report, then the defendant would not be willfully doing wrong in doing (omitting) something the law forbids (requires), as that term is used in these instructions.

"Whether the defendant acted in good faith for the purpose of seeking guidance as to questions about which he was in doubt, and whether he made a full and complete report to his attorney, and whether he acted strictly in accordance with the advice received, are questions for you to determine."

"Under the circumstances of this case, a judgment limited to an injunction is clearly inadequate to deter those who deliberately engage in commercial piracy which defrauds thousands of consumers and injures a trade name built up at considerable cost by legitimate means."

In *Bassett*, defendant Revlon manufactured and marketed a cuticle trimmer which infringed plaintiff's basic trademark "Trim." The evidence showed that Revlon had attempted unsuccessfully to buy Bassett's business, and thereafter began to market the infringing article. Judge Frankel, the trial judge, found that Revlon intentionally and fraudulently infringed Bassett's mark. The Second Circuit quoted his condemnation at 435 F.2d 662:

"Revlon's actions and contentions are surrounded by an aura of indifference to plaintiff's rights and a smug willingness to determine unilaterally that the good will plaintiff had sought to foster could safely be treated as a nullity. These elements amount to a species of bad faith and wrongful intent."

The Second Circuit agreed with the trial court's finding that Revlon had "deliberately and fraudulently infringed Bassett's mark," *id.* at 664. "Accordingly," Judge Lumbard wrote, "a full accounting is proper as a deterrent." The opinion continues:

"It is essential to deter companies from wilfully infringing a competitor's mark, and the only way the courts can fashion a strong enough deterrent is to see to it that a company found guilty of wilful infringement shall lose *all* its profits from its use of the infringing mark. See *Monsanto Chemical Co. v. Perfect Fit Products Co., supra*, 349 F.2d at 390. Revlon's course of conduct over a period of years has demonstrated a callous disregard for the rights of a competitor and for the mandates of the federal courts; consequently it is appropriate that we require it to make a full accounting." *Ibid.* (emphasis in original).

■ It is clear, therefore, that an accounting for profits is appropriate and desirable where a trademark infringer has wilfully, fraudulently and deliberately violated the law.

The converse, in my view, is equally clear. An accounting for profits is not appropriate where the infringer, while in a judge's eyes having violated the statute, nonetheless acted in good faith. This proposition naturally follows from the settled rule that infringement does not automatically require an accounting, and from the carefully chosen and powerful words of opprobrium which the courts use to justify an accounting on this basis. If words mean anything, it is possible in theory to visualize an infringer who infringed without meaning to do so; who did not set out with the wilful, deliberate and fraudulent intent to infringe; who, on the contrary, before acting received professional and presumably expensive advice that the acts subsequently judicially held to be infringing were not infringing.

■ This is such a case. I am not persuaded that the advice of counsel defense fails because RC–I withheld pertinent facts from counsel or gave counsel false information. I held that the first ad was misleading because it falsely suggested that Cuisinarts had ceased to exist, changing its name to Robot-Coupe. The second ad was misleading because it falsely suggested that Cuisinarts made a professional model food processor. The deposition evidence makes it clear that RC–I's counsel, in giving their advice, were perfectly aware that Cuisinarts was still in business and did not make a professional model machine.

On this fully developed record, which could not usefully be expanded at trial, I conclude that RC–I should not be branded as a willful and fraudulent infringer of Cuisinart's trademark. Accordingly, and in the exercise of my discretion, I decline to order an accounting of RC–I's profits for the purpose of deterrence. This disposes of the third *Bassett* rationale.

■ The first rationale for an accounting is RC–I's unjust enrichment. RC–I would be unjustly enriched if its sales "were attributable to its infringing use of

[Cuisinart's] name." *Bassett* at 664. The burden of proving the amount of such attribution, if any, falls on Cuisinarts. *Vuitton, supra,* at 1077 ("The discretionary award of either damages or profits assumes an evidentiary basis on which to rest such an award. Without such a basis there can be no recovery."). I cannot conclude on this record whether or not Cuisinarts can make such a showing. Its prospects seem doubtful at first blush. Presumably the evidence would have to demonstrate a causal connection between these particular ads (as opposed to the non-infringing aspects of RC–I's campaign) and sales of Robot-Coupe models. I do not now decide that issue of requisite proof because counsel have not briefed it. I do not foreclose Cuisinart's efforts in this direction if it wishes to pursue the theory. Nor do I foreclose a further presentation by RC–I if it considers that a basis for summary judgment can be laid on this aspect of the case. More discovery may be necessary. I do not mean, and will not permit, wide-ranging discovery. There is no basis to order a full-scale accounting. The ads in question ran for a limited time.

To the extent that Cuisinarts incurred expenses in reparative advertising, they are recoverable as damages under the federal and pendent state law claims. By "reparative advertising" I mean Cuisinarts ads which were prompted by and specifically addressed the two misleading RC–I ads. The cost of such ads, if any, must be relatively small. It would not justify a full accounting of RC–I's profits. The costs may be stipulated by the parties, or subject to further discovery if necessary.

■ Lastly under this heading, Cuisinarts claims attorney's fees. Congress amended the Lanham Act, § 1117(3), in 1975 to provide:

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."

Judge Brieant's careful analysis of the legislative history and case law, *Vuitton, supra,* at 1078–79, shows that "exceptional cases" are those "where the acts of in-fringement can be characterized as 'malicious', 'fraudulent', 'deliberate', or 'willful'." Sen.Rep. No. 93–1400, 93rd Cong., 2d Sess. (1974), *reprinted in* (1974) U.S. Code Cong. and Admin.News pp. 7132, 7135. For the reasons stated, RC–I's conduct cannot be so characterized. Accordingly I will make no order in respect of attorney's fees.

It follows that RC–I's motion for partial summary judgment is granted in part and denied in part. The issues are narrowed as specified herein. Future proceedings will be in conformity with this opinion.

The remaining motions may be dealt with at lesser length.

Cuisinarts' motion to amend its complaint so as to add RC–I's French parent Robot-Coupe, S.A. as a party defendant is denied. There is no need to burden this litigation with claims against Robot-Coupe, S.A., with their attendant jurisdictional and substantive issues. That is particularly true in view of the Court's ruling on RC–I's motion for partial summary judgment. Cuisinarts is entitled to monetary damages only in two specific areas: RC–I's sales attributable to the two misleading ads, and the cost of reparative advertising. No basis appears for suggesting that RC–I could not respond to such an award if Cuisinarts is able to meet its burden of proof. As far as equitable relief is concerned, issuance of the writ to RC–I furnishes Cuisinarts with adequate protection. The motion to add Robot-Coupe, S.A. is denied.

Consistent with the foregoing rulings, I affirm Magistrate Gershon's order quashing Cuisinarts' notices to depose the three French directors of RC–I. Cuisinarts does not persuade me, any more than it persuaded the magistrate, that these individuals have anything useful to add to the relatively narrow issues in the litigation, which have been exhaustively inquired into by depositions and document discovery of the Americans concerned with these ads. The magistrate did not depart from any applicable burden of proof. She held that, in the circumstances, RC–I had shown itself entitled to a protective order. I agree.

My conclusion is reinforced by Cuisinarts' failure, subsequent to the magistrate's ruling, to pursue the allegedly significant areas of French involvement when they deposed RC–I's president, Alvin Finesman. Oral Arg.Tr. at 15. That is a telling omission in view of Magistrate Gershon's statement to Cuisinarts' counsel that they could apply again to her for leave to depose the French directors if their best efforts in discovering the American participants left them in genuine need. Tr. 14. Her order quashing the depositions is affirmed.

Cuisinarts' motion to strike RC–I's third through ninth affirmative defenses is granted. They are restatements of RC–I's counterclaims which I have previously dismissed on their merits—or demerits—for substantive reasons which preclude their reincarnation as affirmative defenses.

Magistrate Gershon ruled that RC–I need not answer Cuisinarts' Interrogatory 12(c), which reads:

> "Identify all of RC–I's budgets for advertisement and promotional activities during the relevant time period."

The magistrate held that this information was not relevant to the issues. I agree.

Cuisinarts' objection argues that RC–I's advertising costs are probative on the issue of its own claim for the cost of reparative advertising. Reliance is placed upon *Big O Tire Dealers v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365 (10th Cir.1977). As the Tenth Circuit observed in *Big O* at 1374: "There is precedent for the recovery of corrective advertising expenses incurred by a plaintiff to counteract the public confusion resulting from a defendant's wrongful conduct (citing cases)." That authority supports my conclusion that Cuisinarts is entitled to recover the cost of reparative advertising in the case at bar. But it does not follow that Cuisinarts is entitled to discover RC–I's advertising costs. The compensable costs are those incurred by Cuisinarts, not RC–I. The court in *Big O* looked to the advertising campaign costs of the infringer, Goodyear, as a basis for calculating plaintiff's damages only because "Big O did not have the economic resources to conduct an advertising campaign sufficient to counteract Goodyear's $9,690,029 saturation advertising campaign." *Id.* at 1375. The court applied a percentage to Goodyear's campaign cost as a means of calculating "a reasonable amount equivalent to that of a concurrent corrective advertising campaign." *Ibid.* The calculation was necessary because Big O could not demonstrate costs of its own, not having been in the position to incur them. Cuisinarts can presumably prove the costs it incurred in reparative advertising. If it cannot, there will be no recovery. RC–I's costs are irrelevant in either event, as the magistrate correctly concluded.

Finally, Cuisinarts' motion for a protective order staying discovery is mooted by the resolution of the other motions.

### CONCLUSION

The pending motions are resolved in accordance with this opinion.

The case is respectfully remanded to Magistrate Gershon for continued supervision of those limited areas of discovery contemplated by this opinion. If further discovery is necessary, it shall be concluded not later than April 15, 1984, unless the magistrate for good cause shown enlarges the time.

The foregoing is So Ordered.