**EL GRECO LEATHER PRODUCTS CO., INC. d/b/a Candie's International, Plaintiff,**

v.

**SHOE WORLD, INC. d/b/a Gussini, Defendant.**

**No. 83 Civ. 5376.**

United States District Court, E.D. New York.

Nov. 27, 1989.

J. Joseph Bainton, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for plaintiff.

Russell Falconer, Brumbaugh, Graves, Donohue & Raymond, New York City, for defendant.

MEMORANDUM AND ORDER

GLASSER, District Judge:

This case comes before this court on remand from the Second Circuit, reported

---

at *El Greco Leather Prods. Col, Inc. v. Shoe World, Inc.*, 806 F.2d 392 (1986) *cert. denied*, 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 34 (1987). The Circuit Court reversed this court's dismissal of plaintiff's claim, *El Greco Leather Prods. Co., Inc. v. Shoe World, Inc.*, 599 F.Supp. 1380 (E.D.N. Y.1984), held that the appellant had made out a violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)[1], issued a permanent injunction and remanded "for a determination of damages based solely on the Lanham Act violation." 806 F.2d at 396.

The Circuit Court did not disturb this court's findings of fact, which are set forth at great length at 599 F.Supp. 1383 *et seq.* In summary form, the essential facts are that the plaintiff, El Greco, a New York corporation, owns the federal and state trademarks of "CANDIE'S." *Id.* Defendant Shoe World, a Maryland corporation, owns women's shoe stores nationwide and includes in its inventory the sale of job-lot and closeout merchandise. *Id.* at 1384. Plaintiff engaged Sapatus Assessoria e Lancamentos Ltds., ("Sapatus"), a Brazilian firm, as its exclusive agent for shoe production in Brazil. *Id.* In this case, Sapatus ordered shoes from Solemio, a manufacturer, supervising their production and issuing an Inspection Certificate when it finds the product in compliance with the standards and specifications. *Id.* One of plaintiff's specifications was that the CANDIE'S trademark be imprinted or stamped on the sock lining inserted into the shoe. *Id.* In the transaction that eventually resulted in this litigation, some time prior to July 12, 1983, Sapatus, at plaintiff's request, cancelled two lots of approximately 7,200 pairs of shoes it had ordered from Solemio. *Id.* at 1386. Via its agent for purchasing Brazilian shoes, defendant Shoe World bought the goods with the CANDIE'S mark that had been cancelled by plaintiff and made them available for sale in its stores. *Id.* On December 13, 1983,

plaintiff filed suit alleging that "defendant sold shoes which 'duplicate shoe styles of Plaintiff' and are 'counterfeit.'" *Id.* at 1389. This court found that the goods in controversy were "genuine," *Id.* at 1390, and not infringing. *Id.* at 1394. The Second Circuit reversed, holding as a matter of law that "the CANDIE'S shoes being sold without El Greco's permission or even knowledge were (not) 'genuine' CANDIE'S shoes." 806 F.2d at 395.

This court now addresses the question of whether damages, in addition to the permanent injunction, are an appropriate remedy in this case. Section 35 of the Lanham Act provides that a prevailing plaintiff is entitled, *"subject to the principles of equity,* to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." (emphasis added) 15 U.S.C. § 1117 (1976). In exercising its discretion consistent with the principles of equity, this court must determine whether it is fair and just to award damages to the plaintiff in this context. Upon close and careful scrutiny of all the relevant facts and issues, I conclude that the injunction satisfies the equities of this case and decline plaintiff's plea for damages.

■ By its plain language, the Lanham Act explicitly does not require that a monetary award accompany each finding of a violation of its provisions. A recovery of defendant's profits or plaintiff's damages, like an award for the costs of the action, are "subject to the principles of equity"; the Act does not imply or presume that equity favors an award upon a finding of infringement. The plaintiff here contends that the principles of equity require an accounting if there has been unjust enrichment, if plaintiff was damaged because of the infringement or if, because the infringement was willful, an accounting is necessary for deterrence, citing *W.E. Bassett Co. v. Revlon, Inc.* 435 F.2d 656 (2d Cir.1970). Defendant argues that the

---

1. That section provides:
   Any person who shall, without the consent of the registrant—
   (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale

... of any goods or services on or in connection with which such use is likely to cause confusion....shall be liable in a civil action by the registrant....
15 U.S.C. § 1114(1)

threshold question for any award of damages is whether the defendant acted in good faith, and if so, no award is appropriate, relying primarily on *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686 (2d Cir.1970), *cert. denied*, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971).[2] There is authority to support both views, which are not always explicitly distinguished from each other. Following either analysis, however, this court is led to the conclusion that no damages should be awarded.

■ In *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947), the Supreme Court upheld the denial of an accounting in an unfair competition and trademark infringement case based on the fact that there was "no showing of fraud or palming off" and, noting that "the character of the conduct giving rise to the unfair competition is relevant to the remedy which should be afforded," ruled that an injunction was sufficient to satisfy the equities of that case. *Id.* at 130, 67 S.Ct. at 1139. The Fifth Circuit, citing *Champion Spark Plug* in *Bandag Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903 (1984), sustained the lower court's finding of trademark infringement but reversed an award of damages, holding that "an injunction alone can, under appropriate circumstances, fully satisfy the equities of a given case, particularly in the absence of a showing of wrongful intent, (citations omitted) or upon an inconclusive showing that the actions complained of did in fact cause actual damage to the plaintiff (citations omitted)." *Id.* at 917.

The Second Circuit has clearly stated that "the decision as to whether a defendant will be ordered to account for its profits under § 1117 rests in the broad discretion of the district court, guided by the principles of equity." *Burndy Corp. v. Teledyne Industries, Inc.* 748 F.2d 767, 772 (2nd Cir.1984). In *Zeiss, supra*, the Court of Appeals held that because the defendant

acted in a good faith belief in his right to use the trademark and because there was no showing of fraud or palming off, damages were inappropriate. *Id.* at 707. The Court based its conclusion on a reading of the Lanham Act that requires a showing of infringement "with the deliberate intent to cause confusion, mistake or to deceive purchasers; in other words to purposely palm off the infringer's goods as those of the infringed. (citations omitted). It has been held also that a plaintiff is not entitled to a monetary award when the defendant apparently acted in a good faith belief in his right to use the mark. (citations omitted)" *Id.* In that case, the Court reversed an award for damages despite its acceptance of the district court finding that the appellants had at all times been on full notice of the claims of trademark infringement. *Id.*

In *Cuisinarts, Inc. v. Robot–Coupe Intern. Corp*, 580 F.Supp. 634 (S.D.N.Y. 1984), the district court found that, "(a)n accounting for profits is not appropriate where the infringer, while in a judge's eyes having violated the statute, nonetheless acted in good faith." *Id.* at 639.[3] Indeed, the court notes that in the leading Second Circuit Lanham Act cases where damages were awarded, "the infringing conduct was wrong, blatant, and totally inexcusable," *Id.* at 638, citing *Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co.*, 349 F.2d 389 (2d Cir.1965), *cert. denied*, 383 U.S. 942, 86 S.Ct. 1195, 1198, 16 L.Ed.2d 206 (1966), and *Revlon*, 435 F.2d 656, both cases in which the defendant was found to have acted deliberately and fraudulently in willful violation of the law.

Finally, in a case factually similar to the facts before this court, damages were denied against the seller of goods carrying the plaintiff's trademark where the manufacturer under contract to the plaintiff had violated the contract, and without notice, sold the seller the goods. *Finity Sportswear, Ltd. v. Airnit, Inc.*, 631 F.Supp. 769,

---

**2.** *Revlon* was decided on November 10, 1970 and *Zeiss* was decided on November 2, 1970 and the cases do not make reference to each other.

**3.** Having characterized the finding of good faith in this way as determinative on the question of

damages, the court nonetheless proceeds to conclude that the absence of proof of unjust enrichment also precludes an accounting. *Id.* at 639–40.

771 (S.D.N.Y.1985). The court held that where a defendant's conduct threatens a likelihood of confusion, it would be enjoined regardless of its good faith, but that "a Lanham Act plaintiff is generally not entitled to damages where a defendant has acted without knowledge or intent to infringe." *Id.*[4]

*Good Faith Infringement*

*Zeiss, supra,* involved a dispute between a West German entity and an East German corporation and its American distributors in which the court noted that "(t)he determination of ownership and right to use of the trade names and marks has involved the resolution of many complex and difficult factual and legal issues." 433 F.2d at 707. The court concluded that damages were inappropriate despite the fact that appellants were on notice of appellee's claims of infringement because "(p)rior to the trial of this case there were many unresolved factors upon which appellants might reasonably rely in support of their claims. ... (Thus) we cannot find under all the circumstances that they acted in bad faith in asserting their claim." *Id.*

Similarly, in *Cuisinarts, supra,* good faith reliance on counsel's advice was sufficient for the court to find that the infringer acted without bad faith. In that case, Judge Haight noted that the advertisements in question were facially and factually false because he had found them to be so; had an appellate court reversed his finding, "the ads would have instantly shed their misleading character and become pure as the driven snow. Such are the practical realities of law ... This Court's finding that the statements were false and misleading is not sufficient in and of itself to brand (the plaintiff) as a wilful and deliberate infringer." 580 F.Supp. at 637. The Court concluded that where a person acts in good faith, here in reliance on counsel's advice, "surely the Chancellor must pause before branding the (defendant) as a wilful, deliberate, fraudulent thief: those being

the epithets which courts apply to a trademark infringer who is condemned to an accounting for profits." *Id.* at 638.

Here, this court initially found that there had been no violation of the Lanham Act. The Circuit Court found otherwise. It is difficult to conclude, given the differing legal conclusions of these two courts, that the defendant's behavior was so clearly wrong as to be justly characterized as undertaken in bad faith, let alone willful.

The Court of Appeals, in reversing this court and concluding that there had been a violation of the Lanham Act, stated that the defendant "is liable for the results of such infringement and its claimed lack of knowledge of its supplier's infringement, even if true, provides no defense." 806 F.2d at 396. Lack of knowledge is no defense to the finding of a violation of the Act and will not preclude the issuance of an injunction; lack of bad faith is, however, a basis on which to deny monetary damages.

The record is devoid of any evidence that Shoe World, which had bought CANDIE'S shoes from the plaintiff and sold them in the preceding three years, was somehow on notice that the shoes were infringing. Shoe World bought the shoes for retail sale in the United States from Brazilian manufacturers after plaintiff had cancelled its orders. 599 F.Supp. at 1386–88. While the Circuit Court found that the shoes sold by Shoe World were not genuine because El Greco had not given its consent to the use of the mark on those shoes, the Court did not suggest that the defendant, in offering these shoes for sale in its stores, deliberately intended to cause confusion, mistake or to deceive purchasers. *See Zeiss,* 433 F.2d at 707. Indeed, the appellate court viewed the absence of inspection certificates as a critical factor in concluding that the shoes in question were not "genuine" as a matter of law. As defendant points out, however, the fact that the shoes in question lacked inspection certifications—a

---

**4.** In *Finity,* the complaint requested injunctive relief but because there was no claim that the defendant was currently selling infringing goods, or that there was an immediate danger of future violation, the court, while inviting plaintiff to return to apply for an injunction if that were desired, converted plaintiff's motion into a claim for damages, which it denied. *Id.* at 770–71.

factor critical to the appellate court's determination that the shoes in question were not "genuine"—was simply a condition precedent to payment in the El Greco–Solemio contract, not a document transferable between Solemio and Shoe World's agent, and thus in no way put the defendant on notice of a potential trademark infringement.

The Lanham Act makes any award of damages subject to the principles of equity. Equity requires that this court do what is fair and just. Shoe World which, acting in good faith, innocently infringed El Greco's trademark, should not be required to pay monetary damages where an injunction is in place which fully protects plaintiff from future harm.

Plaintiff relies heavily on *Revlon* and an earlier Second Circuit decision, *Monsanto*, *supra*, to support its contention that an accounting should be awarded in this case. Neither case, however, stands for the proposition that a good faith infringer should be held liable for profits and damages. In *Monsanto* the Court held that where deliberate trademark infringement had been found the public interest in deterring fraudulent trade practices required an accounting. 349 F.2d at 390. In fact, the district court decision in *Revlon, W.E. Bassett Company v. Revlon, Inc.*, 305 F.Supp. 581 (S.D.N.Y.1969), which was partially reversed on other grounds,[5] read *Monsanto* to focus the inquiry regarding the appropriateness of an accounting on "the degree of 'fraud,' of potential or actual deception of the public, and of apparent need for deterrence of the offender—in short upon the relevant public interests and attendant equities" in determining whether an account-

ing should be allowed, *Id.* at 590. *Monsanto* is significant for having expanded the remedy of an accounting to cases in which the parties are not directly competing for trade, 349 F.2d at 390, but should not be read as mandating district courts to order an accounting once a violation is established.

In *Revlon*, the plaintiff was a corporation engaged in the manufacture and sale of manicuring instruments under its registered trademark, TRIM. 305 F.Supp. at 584. Its goods incorporated TRIM as a component, *e.g.* TRIM CLIP, TRIMETTE, POCKET TRIM, TRIM–PAC, etc. *Id.* The defendant commenced the marketing of a cuticle trimmer which it called CUTI–TRIM, and plaintiff filed suit for trademark infringement. *Id.* at 585. The district court concluded that "an accounting for the period before the preliminary injunction would be an unjustifiably harsh and inequitable sanction (given that) (w)hile defendants acted in violation of plaintiff's legal rights in its registered trademark, there appears to have been no fraud, no deliberate effort at palming off, and no strong purpose to accomplish such deceptions of the public." 305 F.Supp. at 591. The circuit court reversed the denial of a full accounting, concluding that: "Revlon was found to have deliberately and fraudulently infringed (plaintiff's) mark ... Accordingly, a full accounting is proper as a deterrent." 435 F.2d at 664.[6]

In fact, the district court decision in *Revlon* has been cited in conjunction with the circuit court decision in *Zeiss* for the proposition that "where defendant's conduct was in good faith or merely accidental or with-

**5.** See footnote 6.

**6.** The court then goes on to address plaintiff's supplemental complaint attacking defendant's conduct upon appeal from the award of the preliminary injunction and concludes that "Revlon's grave misconduct in (a) misleading the Court of Appeals in its representations leading to a stay of the preliminary injunction, and (b) violating the terms of that injunction upon the basis of a palpably untenable 'interpretation' of what it meant", *Id.* at 590, justify the court in awarding expenses, including attorney's fees or "the accounting earlier denied to plaintiff" for

the sale of items after issuance of the injunction. *Id.* at 594. The circuit court reversal concludes that defendant is entitled to both the expenses in prosecuting the contempt, including counsel fees, *and* damages in the amount of Revlon's unlawful profits after the preliminary injunction, because of "the need to deter deliberate infringers. ... Revlon's course of conduct over a period of years has demonstrated a callous disregard for the rights of a competitor and for the mandates of the federal courts; consequently it is appropriate that we require it to make a full accounting. 435 F.2d at 664."

out actual fraudulent intent, an accounting of profits or damages will ordinarily not be ordered" 87 C.J.S. *Trade-marks* § 215(d) (1989). Indeed, in *Vuitton et Fils, S.A. v. Crown Handbags,* 492 F.Supp. 1071 (1979), *aff'd,* 622 F.2d 577 (1980), that court understood the circuit court decision in *Revlon* to stand for the proposition that, "(t)he awarding of profits is designed to be a deterrent to those who would wilfully infringe a competitor's mark." *Id.* at 1077. Thus, both *Revlon* decisions and *Monsanto* hold that an accounting is proper where infringement is deliberate and fraudulent and *Zeiss* stands for the proposition that good faith infringement does not entitle a plaintiff to monetary relief.

*The Revlon Test*

The *Revlon* test for an accounting is described in *Burndy:* "Normally an accounting will be ordered only if the 'defendant is unjustly enriched, if the plaintiff sustained damages from the infringement, or if an accounting is necessary to deter a willful infringer from doing so again.' (citing *Revlon* )" 748 F.2d at 772. This court has already laid to rest the question of a deterrence award in this case by concluding that the infringement was innocent, not willful. *See supra* at pp. 28–29. We now turn to the remaining prongs of the *Revlon* test, *i.e.* whether the defendant was unjustly enriched or the plaintiff damaged by the infringement and conclude that the both questions must be answered in the negative.

Plaintiff contends that defendant was unjustly enriched when it made a profit from shoes bearing the CANDIE'S trademark and urges this court to award an accounting under the unjust enrichment prong of the *Revlon* test. However, plaintiff fails to cite any post-*Revlon* case in this circuit, nor has this court discovered a case, in which an innocent infringer was required to account. Indeed, the Second Circuit recently noted that, "(s)uch relief is rarely granted and appears to have been limited to situations in which the defendant's profits represent unjust enrichment derived from diversion of business that clearly would otherwise have gone to the plaintiff,

such as in instances where the defendant palmed off its goods as made by the plaintiff." *Id.* It would fly in the face of the factual record before this court to describe Shoe World's behavior as "palming off" the plaintiff's goods and diverting El Greco's business. Palming off refers to an attempt by a competitor to imitate the goods of the plaintiff with an intent to deceive the public, thereby diverting the competitor's business. 74 AM.JUR.2D *Trademarks and Tradenames* § 148 (1979). Because Shoe World had no notice of the non-genuine character of the CANDIE'S shoes it purchased via its agent and had no intent to deceive the public when it put those shoes on sale, it cannot be said to have unjustly enriched itself. Indeed, as has been indicated above, Shoe World had bought shoes from Candie's and sold them during the preceding three years. Equity does not require that this defendant be divested of the profits it made in the sale of the CANDIE'S shoes.

In *Finity,* the Court addressed a similar factual context and, noting that a monetary award under the Lanham Act is subject to the rules of equity, concluded that "(p)laintiff's damages result from its own bad judgment in selecting (the manufacturer) as its agent, and from the misfeasance of that agent. We would therefore find it highly inequitable to make (the defendant, seller) responsible for any part of those damages absent a showing of bad faith on its part." 631 F.Supp. at 771. The doctrine of unjust enrichment requires that a person not retain money or benefits which in justice and equity belong to another. BLACK'S LAW DICTIONARY 1377 (5th ed. 1979) In this case, while defendant's sale of the shoes resulted in a trademark infringement, it is to the Brazilian manufacturer who knowingly sold shoes with plaintiff's trademark which plaintiff can turn for a monetary recovery. In my earlier decision, I noted that "as plaintiff alleges that the Brazilian manufacturers improperly disposed of the shoes in issue, it is quite possible that plaintiff has an adequate legal remedy against these manufacturers for any contract damage it may prove." 599 F.Supp. at 1401.

Finally, as regards the question of damage to the plaintiff, the Circuit court left undisturbed this court's conclusion that poor quality was *not* the reason plaintiff had rejected the shoes which were later resold by defendant. 806 F.2d at 392. In *Revlon*, the Court found that despite the finding of infringement, there was neither a likelihood of confusion nor damage to good will, given that the infringing product was of high quality. *Id.* The CANDIE'S shoes sold by Shoe World were not found to have been of inferior quality, a conclusion the court based in part on the testimony of plaintiff's expert, who was unable to distinguish plaintiff's shoes from those the defendant had sold, 599 F.Supp. at 1386.

Plaintiff asserts that it is owed the costs of this action. Having concluded, however, that no accounting or damages are owed and that an injunction fully satisfies the equities of this case, I conclude that no costs are owed.

SO ORDERED.