**MATTEL, INC., Plaintiff,**

v.

**ROBARB'S, INC., et al., Defendants.**

**No. 00 CIV 4866 RWS.**

United States District Court,
S.D. New York.

April 18, 2001.

Perkins & Dunnegan, New York City, By William Dunnegan, Ann Marie Croswell, Of Counsel, for Plaintiff.

Marshall & Melhorn, Toledo, OH, By Michael S. Scalzo, Jennifer J. Dawson, Of Counsel, for Defendants.

## OPINION

SWEET, District Judge.

Defendants Robarb's, Inc. ("Robarb's"), Robert R. Carpenter, Robert E. Carpenter, Barbara Carpenter, and Rollin K. Carpenter (collectively "the defendants"), have moved for a transfer of venue pursuant to 28 U.S.C. § 1404(a) or dismissal for forum non conveniens, for judgment on the pleadings on the copyright infringement claims brought by plaintiff Mattel, Inc. ("Mattel") pursuant to Fed.R.Civ.P. 12(c), partial summary judgment pursuant to Fed. R.Civ.P. 56, and for an order pursuant to Fed.R.Civ.P. 30(d)(1) compelling Mattel to produce a witness for deposition and to extend the discovery deadline accordingly. Defendants also seek fees and costs in connection with these motions. Mattel opposes the motions.

For the reasons set forth below, the motions are granted in part and denied in part.

### The Parties

Mattel is a Delaware Corporation with its principal place of business in El Segundo, California. Mattel is the world's largest manufacturer of toys, games and playthings. Two of its lines include the trademarked "Hot Wheels" and "Matchbox" brands of miniature toy vehicles.

Robarb's is a family-owned and operated Ohio corporation with a principal place of business in Liberty Center, Ohio, which manufactures Collectible Car Display Frames ("Collectible Car Displays") designed to display collectible miniature die-cast cars in their original blister packaging.

Robert R. Carpenter, a resident of Liberty Center, Ohio, is the owner and acting president of Robarb's.

Barbara Carpenter is a Robarb's employee and resides with her husband, Robert R. Carpenter, in Liberty Center, Ohio.

Robert E. Carpenter, Robert R. Carpenter's father, is a Robarb's employee who resides in Liberty Center, Ohio.

Rollin K. Carpenter, Robert R. Carpenter's brother, is the Vice President of Sales of Robarb's and resides in Liberty Center, Ohio.

### Procedural History

The complaint in this action, filed on June 30, 2000, alleges that Robarb's infringed on Mattel's trademarks and copyrights by displaying inserts with the trademarked names, "Mattel," "Hot Wheels," and "Matchbox" in its Collectible Car Displays without authorization. Mattel seeks "a reasonable royalty" and treble fees pursuant to 15 U.S.C. § 1117(b). The defendants have filed a cross-claim alleging that Mattel has interfered with their contractual relations and engaged in unfair competition.

After an August 3, 2000 hearing, the Honorable Sidney H. Stein, U.S. District Judge, sitting in Part I, issued a preliminary injunction pursuant to Fed.R.Civ.P. 65. Judge Stein found that the trademarks at issue were protectable, and that Robarb's Collectible Car Display inserts were likely to confuse consumers as to the origin, manufacture, or affiliation of the display case. Furthermore, Judge Stein found that, although Robarb's could lawfully inform the public that its display case was compatible with Mattel's miniature car packages, the specific inserts Robarb's employed "far exceed the bounds of fair use." (Stein Aug. 22, 2000 Order at 5.) The injunction, issued on August 25, 2000, bars the defendants from "utilizing the current cardboard inserts or any replacement inserts which infringe the 'Mattel,' 'Hot Wheels,' or 'Matchbox' trademarks in connection with the sale or marketing of the Robarb's display cases." (Id. at 6; Prel. Inj. at 2.)

On February 23 and 27, 2001, defendants filed the instant motions, and Mattel filed its opposition on March 15, 2001. Robarb's replied on March 21, 2001, whereupon the motion was deemed fully submitted. Meanwhile, the parties submitted a Joint Final Pretrial Order on March 16, 2001.

### Facts

In their Statement pursuant to Local Civil Rule 56.1, defendants allege that the following are undisputed material facts: (1) they relied on the advice of counsel before using the inserts at issue in this action (the "Original Inserts"); (2) they relied on what they believed to be Mattel's express approval, which came in the form of positive feedback from three individuals who identified themselves as manufacturers of the cars exhibited in the Robarb's Collectible Car Display at an International Toy Fair in New York seventeen months before this action was filed; (3) another manufacturer whose cars were displayed in Robarb's inserts expressed no objection to the use of that trademark after receiv-

ing a response to an inquiry; and (4) shortly after the commencement of this action, counsel for Robarb's communicated in writing its willingness to stop shipping the Original Inserts and request that its customers pull the Original Inserts from existing Collectible Car Displays. Mattel asserts that there is a genuine issue of material fact as to each of these four allegations, and as to factual issues regarding actual confusion and bad faith.

### Discussion

#### I. Transfer of Venue

#### A. Applicable Legal Standard

Section 1404(a) of Title 28 of the United States Code provides in relevant part that, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

This section is a statutory recognition of the common law doctrine of forum non conveniens as a facet of venue in the federal courts. *See Wilshire Credit Corp. v. Barrett Capital Management Corp.*, 976 F.Supp. 174, 180 (W.D.N.Y.1997). Section 1404(a) strives to prevent waste " 'of time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense.' " *Wilshire*, 976 F.Supp. at 180 (*quoting Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)).

" '[M]otions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and fairness on a case-by-case basis.' " *Linzer v. EMI Blackwood Music Inc.*, 904 F.Supp. 207, 216 (S.D.N.Y.1995) (*quoting In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir.1992)) (*citing Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). The burden of demonstrating the

desirability of transfer lies with the moving party. *See, e.g., Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F.Supp. 955, 962 (S.D.N.Y.1995).

■ Thus, the inquiry on a motion to transfer is two-fold. The court must first determine whether the action sought to be transferred is one that "might have been brought" in the transferee court. Second, the court must determine whether, considering the "convenience of parties and witnesses" and the "interest of justice," a transfer is appropriate. *Wilshire*, 976 F.Supp. at 180.

In determining whether transfer is warranted "for the convenience of the parties and witnesses [and] in the interest of justice," courts generally consider several factors, including: (1) the convenience of witnesses, (2) the convenience of the parties, (3) the locus of operative facts, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the location of relevant documents and the relative ease of access to sources of proof, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances. *See Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F.Supp.2d 203 (S.D.N.Y.1998) (*citing Wilshire*, 976 F.Supp. at 181); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507–08, 67 S.Ct. 839, 842–43, 91 L.Ed. 1055 (1947); *Constitution Reinsurance Corp. v. Stonewall Ins. Co.*, 872 F.Supp. 1247, 1250 (S.D.N.Y.1995); *Cento Group, S.p.A v. OroAmerica, Inc.*, 822 F.Supp. 1058, 1060 (S.D.N.Y.1993).

#### B. The Action Will Not Be Transferred Pursuant to § 1404 or Dismissed for Forum Non Conveniens

■ Although the defendants raise compelling grounds for transfer, the late tim-

ing of this motion creates concerns of judicial economy that outweigh considerations of inconvenience and expense to the defendants.

This action could have been brought in the Western Division of the United States District Court for the Northern District of Ohio, which has personal jurisdiction over the defendants. As defendants note, they and three of their potential nonparty witnesses live in Ohio. Between Robert E. Carpenter's poor health and Robert R. and Barbara Carpenter's three young children, the defendants will clearly be inconvenienced by having to travel to the Southern District of New York for trial. Moreover, whereas Mattel is a thriving national toy company whose employees will have to travel from California for trial in any event,[1] Robarb's and the individual defendants allege that they are on precarious financial grounds.

However, the parties have already expended considerable time and expense in conducting discovery and preparing a joint final pretrial order in this District. Given the extent of pretrial resolution of the relevant issues, the trial is unlikely to last more than two or three days. Transferring the case at this juncture would unnecessarily require another court to become familiar with this action. Finally, Robarb's has cited no case in which transfer of venue was granted after the filing of a final joint pretrial order.

The motion to transfer this action to the Western Division of the United States District Court for the Northern District of Ohio, or to dismiss for forum non conveniens, is denied.

As the adoption of § 1404 "relegated common law forum non conveniens to cases where the alternative forum to which a transfer is proposed is a foreign one," *DiRienzo v. Philip Services Corp.*, 232 F.3d 49, 56 (2d Cir.2000), the motion for a dismissal is also denied.

## II. *Partial Summary Judgment on the Trademark Infringement Damage Claims Is Denied*

### A. *Legal Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment may be granted when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Second Circuit has repeatedly noted that "as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)); *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir.1995); *Burrell v. City Univ.*, 894 F.Supp. 750, 757 (S.D.N.Y.1995). If, when viewing the evidence produced in the light most favorable to the nonmovant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate. *See Burrell*, 894 F.Supp. at 758 (*citing Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991)).

Materiality is defined by the governing substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

---

1. Counsel for Mattel is based in New York.

"[T]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985).

For a dispute to be genuine, there must be more than "metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## B. *Legal Standard for Sustaining a Claim for Damages Due to Trademark Infringement*

Defendants have moved for summary judgment as to Mattel's claim for trademark infringement damages in the amount of a trebled "reasonable royalty," pursuant to 15 U.S.C. § 1117(b), on the grounds that injunctive relief is sufficient.

In order to justify any relief, a trademark plaintiff must prove the basic elements of infringement: either (1) actual confusion, or (2) bad faith from which an inference of actual confusion can be drawn. *See* 15 U.S.C. § 1125(a)(1)(A)-(B); *see George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir.1992) ("It is well settled that in order for a Lanham Act plaintiff to receive an award of damages the plaintiff must prove either 'actual consumer confusion or deception resulting from the violation' [citations omitted] or that the defendant's actions were intentionally deceptive giving rise to a rebuttable presumption of customer confusion.").

Whether monetary damages shall be awarded pursuant to § 1117 "rests in the broad discretion of the district court, guided by the principles of equity." *Burndy Corp. v. Teledyne Industries, Inc.*, 748 F.2d 767, 772 (2nd Cir.1984). For a damages award to be justified after an injunction has issued, a trademark plaintiff must also show that the defendant "willfully intended to trade on the owner's reputation or to cause dilution of the famous mark." 15 U.S.C. § 1125(c)(2). *See Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 500 (2d Cir.2000) (finding damages not available pursuant to § 1125(c)(2) where infringement was not willful), *cert. denied*, 530 U.S. 1262, 120 S.Ct. 2719, 147 L.Ed.2d 984 (2000). In other words, damages are properly denied " 'where an injunction will satisfy the equities of the case' and where 'there has been no showing of fraud or palming off.' " *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 706–07 (2d Cir.1970) (*quoting Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 131, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947)), *cert. denied*, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971).

The *Zeiss* Court, interpreting the Lanham Act as requiring a showing of infringement "with the deliberate intent to cause confusion, mistake or to deceive purchasers; in other words to purposely palm off the infringer's goods as those of the infringed," reversed a damages award, noting that "a plaintiff is not entitled to a monetary award when the defendant apparently acted in a good faith belief in his right to use the mark." 433 F.2d at 707 (citations omitted).

### 1. *Actual Confusion Exists*

■ Whether consumers are likely to be confused by a defendant's use of a senior user's protectable mark[2] depends on sev-

---

**2.** The Court adopts Judge Stein's finding that Mattel's famous and distinctive trademark is eligible for protection.

eral factors: (1) the strength of the plaintiff's mark; (2) the similarity of the marks; (3) the competitive proximity of the marks; (4) the likelihood that the plaintiff will bridge any gap between the products' markets; (5) proof of actual confusion between the products; (6) the defendant's good faith; (7) the quality of the defendant's product compared to the plaintiff's product; and (8) the sophistication of the purchasers. *See Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961); *see also Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 743 (2d Cir. 1998). As Judge Stein found, each of these factors weighs toward a finding of actual confusion.

Most significantly, actual confusion may be proved by way of a consumer survey alone. *The Sports Authority v. Prime Hospitality Corp.*, 89 F.3d 955, 964 (2d Cir.1996). A survey conducted in order to determine actual confusion must encompass a universe of potential consumers who use the product. *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 118 (2d Cir.1984). Mattel has commissioned such a survey from Howard Marylander, M.B.A. ("Marylander"), an expert in the field of consumer research who has over twenty-six years of experience with the design, execution and analysis of survey research. (Dunnigan Aff. Ex. B.).

At a show featuring antique and collectible toys, dolls, and sports cars in Greensboro, North Carolina, Marylander surveyed one hundred and twenty-four persons who met enumerated criteria identifying them as "qualified respondents," or persons at least sixteen years old who had experience collecting toy vehicles. Respondents were shown the Robarb's Collectible Car Display and asked to examine it for as long as they wished. Then, after the Robarb's display case was removed from view, trained interviewers asked the respondents a series of ques-

tions to determine whether they believed the Robarb's case was made by, or connected with, Mattel, Hot Wheels, or Match Box.

Ninety-four percent of all respondents believed that the Robarb's Collectible Car Display was associated with Mattel, Hot Wheels, or Match Box. In Marylander's professional opinion, "there is a very substantial confusion between Robarb's Collectible Car Display and Mattel, Hot Wheels, and Matchbox... This extent of confusion is among the highest I have ever observed on any studies I have conducted for commercial clients or legal cases." (Dunnigan Aff. Ex. B. at 6.)

The defendants have not contested the allegation that the Robarb's Collectible Car Display causes actual confusion in the marketplace. As Judge Stein found before issuing a preliminary injunction, "Robarb's use of the Mattel trademarks poses a strong likelihood of consumer confusion as to the origin, manufacture or affiliation of the display case." (Stein Order of Aug. 22, 2000 at 4.). The evidence presented unquestionably establishes actual confusion. *See RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1061 (2d Cir.1979) (district court had found actual confusion based on evidence that two witnesses were actually confused by similarity of appearance between products, and consumer study showing 15–20% rate of product confusion); *Cache, Inc. v. M.Z. Berger & Co.*, No. 99 CIV. 12320(JGK), 2001 WL 38283, at *10, *11 (S.D.N.Y. Jan.16, 2001) (finding actual confusion based on result of professional survey showing 51% rate of confusion, plus anecdotal evidence of actual confusion); *Lon Tai Shing Co., Ltd. v. Koch + Lowy*, No. 90 Civ. 4464(LJF), 1992 WL 18806, *3 (S.D.N.Y. Jan.28, 1992) (finding that survey showing at least 18% of responses reflect actual consumer confusion "satisfies

the necessary threshold for determining actual confusion in this circuit.").

Fair use is a defense to liability where "the use of the name, term or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party...." 15 U.S.C. § 1115(b)(4). *See also Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.,* 166 F.3d 65, 73 (2d Cir.1999). Judge Stein found as a preliminary matter that "Robarb's cardboard inserts ... far exceed the bounds of fair use," and the Court adopts his holding. The Court need not make further findings as to fair use, because, as set forth below, Mattel has failed to establish one requisite for a damage award: the existence of a genuine issue of material fact disputing that Robarb's infringement was not willful.

### 2. *Damages Are Not Warranted Because The Infringement Was Not Willful*

Partial summary judgment on the damages claim is appropriate because Mattel has failed to raise a genuine issue of material fact suggesting that Robarb's infringement was willful.

A finding that a defendant has infringed and is not entitled to invoke the excuse of fair use does not preclude a finding that the infringement was not willful, and therefore that damages are unwarranted. *See, e.g., El Greco Leather Products Co., Inc. v. Shoe World, Inc.,* 726 F.Supp. 25, 28 (E.D.N.Y.1989) (holding that defendant "which, in good faith, innocently infringed [plaintiff's] trademark, should not be required to pay monetary damages where an injunction is in place which fully protects the plaintiff from future harm."); *Finity Sportswear, Ltd. v. Airnit, Inc.,* 631 F.Supp. 769, 771 (S.D.N.Y.1985) (noting that "a Lanham Act plaintiff is generally not entitled to damages where a defendant has acted without knowledge or intent to infringe"); *Cuisinarts, Inc. v. Robot–Coupe Intern. Corp.,* 580 F.Supp. 634 (S.D.N.Y.1984) (denying monetary award against infringer who acted in good faith).

The line between unfair use and bad faith is particularly blurry where, as here, the trademark was used to show the compatibility of the plaintiff's product with the defendant's product, rather than simply as a means for the defendant to exploit the goodwill associated with the plaintiff's mark. *Compare, e.g., Neutrik AG v. Switchcraft, Inc.,* No. 99 CIV. 11931(JSM), 2001 WL 286722, *3 (S.D.N.Y. March 23, 2001) (finding that defendant's use of plaintiff's mark to show compatibility of defendant's product with plaintiff's product was fair) *with Anton/Bauer, Inc. v. Energex Systems Corp.,* 839 F.Supp. 243, 246 (S.D.N.Y.1993) (finding that factually inaccurate claim of compatibility between defendant's and plaintiff's products cross violated Lanham Act).

In order to determine whether the evidence supports a finding of willful or deliberate infringement, the Court looks at the evidence relating to Robarb's conduct. *See, e.g., Lon Tai Shing,* 1992 WL 18806, at *4. Mattel contends that Robarb's use without prior approval is clear evidence of bad faith given the marks' high profile. However, "[p]rior knowledge of a senior user's trade mark does not necessarily give rise to an inference of bad faith and may be consistent with good faith." *Arrow Fastener Co., Inc. v. Stanley Works,* 59 F.3d 384, 397 (2d Cir.1995).

The defendants assert that they sought the advice of counsel before marketing the product and relied on the legal opinion

that the Original Inserts displaying the Mattel-associated marks constituted fair use. (Def. S.J. Br. Ex. A ¶ 2.) Reliance on the advice of counsel, even where that advice is legally inaccurate, is an indication of good faith. *See Sports Auth.*, 89 F.3d at 964; *Cuisinarts*, 580 F.Supp. at 638. Secondly, each product carries the label, "manufactured by Robarb's," and includes an insert stating, "Robarb's is not affiliated with Hot Wheels® or Matchbox®," which indicates good faith (although the results of the survey indicate that the labeling was unsuccessful in alerting potential consumers as to the true source of the Collectible Car Display). *See Cosmetically Sealed Indus. v. Chesebrough–Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir.1997).

In addition, each Robarb's display included an insert illustrating both a Hot Wheels® die-cast car and either a Racing Champions® die-cast car or a Matchbox® die-cast car, which, Robarb's argues, demonstrates that it was not using Mattel's marks as trademarks, but rather to describe its product and how it may be used with Mattel's products, a use which indicates good faith. *See, e.g., Something Old, Something New, Inc. v. QVC, Inc.*, No. 98 Civ. 7450 SAS, 1999 WL 1125063, *7 (S.D.N.Y. Dec.8, 1999) ("Knowledge of plaintiff's mark is not sufficient to show bad faith, especially where defendant believed the use was descriptive.") Mattel does not manufacture a frame in which to display its die-cast cars.

Moreover, Robarb's argues that it believed Mattel approved of its use of the packaging after three individuals identifying themselves as manufacturers of Hot Wheels and Matchbox cars who viewed Robarb's booth at the International Toy Fair at the Javits Convention Center in New York City informed Robarb's that they liked the display and thought it was "really 'cool'" (Def.S.J.Br.Ex. B.) The fact that these statements were made in February 1999, approximately seventeen months before this action was filed, might reasonably have been interpreted by Robarb's as evidence that its use was descriptive and fair rather than infringing. *See, e.g., Hard Rock Cafe Intern. (USA) Inc. v. Morton,* No. 97 Civ. 9483(RPP), 1999 WL 717995, *31 (S.D.N.Y. Sept.9, 1999) (noting that plaintiff's acquiescence to defendant's use of mark prior to initiation of lawsuit was evidence weighing against a finding of willful infringement or bad faith).

Finally, upon receiving notice of Mattel's concerns, Robarb's expressed a desire to resolve the case without resort to a lawsuit; after the suit was filed, Robarb's indicated to Mattel in writing that it was willing to cease marketing the Original Inserts and to request that its customers pull the Inserts from the Collectible Car Displays. (Def. S.J. Br. Exs. A ¶ 4, ¶ 5, C.) This willingness to yield once Mattel claimed infringement is indicative of good faith. *See id.; cf. International Star Class Yacht Racing Ass'n ("ISCYRA") v. Tommy Hilfiger, U.S.A., Inc.,* 80 F.3d 749, 753–54 (2d Cir.1996) (finding bad faith in defendant's continued unlawful use of mark after plaintiff had filed trademark infringement suit and until enjoined).

In sum, Mattel has failed to raise a genuine issue of material fact as to whether Robarb's infringement of Mattel's trademarks was willful. Rule 56 provides that a party opposing summary judgment:

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set froth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). *See also* Local Civil Rule 56.1 ("Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)."). Mattel's mere assertion that "there is a genuine issue of material fact" in its Rule 56.1 Statement fails to meet this standard. As evidence presented by Robarb's indicates good faith, and is not rebutted by any of the affidavits presented by Mattel, section 1125(c)(2) precludes Mattel from receiving damages. Robarb's motion for partial summary judgment as to damages is therefore granted.

### III. Judgment on the Pleadings on the Copyright Claims

#### A. Legal Standard for Judgment on the Pleadings Pursuant to Rule 12(c)

■ Federal Rule of Civil Procedure 12(c) provides for judgment on the pleadings "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988). The pleadings include the complaint, the answer and any written instruments attached as exhibits. *See* Fed. R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

The Rule 12(c) standard is the same as that applied under Rule 12(b)(6). *See Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994). "Therefore, in reviewing a motion for a judgment on the pleadings, a court must assume the facts alleged by the plaintiff to be true and must liberally construe them in the light most favorable to the plaintiff." *AD/SAT a Div. of Skylight, Inc. v. Associated Press*, 885 F.Supp. 511, 514 (S.D.N.Y.1995). A court should not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Sheppard*, 18 F.3d at 150. In sum, "[t]he Court's task is simply to determine whether the plaintiff has a legal right to seek relief based on the allegations in the complaint." *Henschke v. New York Hospital–Cornell Medical Center*, 821 F.Supp. 166, 168 (S.D.N.Y.1993).

#### B. Judgment on the Pleadings on the Copyright Claims is Denied

Defendants seek judgment on the pleadings on the grounds that Mattel does not hold a registration from the United States Copyright Office on the specific product that Mattel claims in Counts 5 and 6 of the complaint that Robarb's infringed. The allegedly infringed work must be registered with the U.S. Copyright Office in order to sustain a copyright infringement action. 17 U.S.C. §§ 411(a), 501(b) (1994); *see Carter v. Helmsley–Spear, Inc.*, 861 F.Supp. 303, 331 (S.D.N.Y.1994), *aff'd in pertinent part*, 71 F.3d 77, 79–80 (2d Cir. 1995); *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 453 (2d Cir.1989).

The Copyright Act guarantees the owner of a registered copyright the "exclusive rights . . . (1) to reproduce the copyrighted work in copies . . . ; [and] (2) to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106. A "derivative work" is defined as "a work based upon one or more preexisting works, such as a[n] . . . art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101.

Any "aspects of a derivative work added by the derivative author are that author's property, but the element drawn from the pre-existing work remains on grant from the owner of the pre-existing work." *Stewart v. Abend*, 495 U.S. 207, 223, 110 S.Ct. 1750, 1761, 109 L.Ed.2d 184

(1990) (*citing Russell v. Price*, 612 F.2d 1123, 1128 (9th Cir.1979) (reaffirming "well-established doctrine that a derivative copyright protects only the new material contained in the derivative work, not the matter derived from the underlying work"), *cert. denied*, 446 U.S. 952, 100 S.Ct. 2919, 64 L.Ed.2d 809 (1980)).

As a result, "the consent of the copyright owner of the pre-existing work is necessary in order to render the derivative or collective work non-infringing." 1 Nimmer on Copyright § 3.06 (1983). One who reproduces a derivative work without the authorization of the preexisting work's registered owner "violates ... the exclusive rights of the copyright owner as provided by sections 106 through 118 ... [and] is an infringer of the copyright." 17 U.S.C. § 501(a). The Copyright Act clearly provides a cause of action for such infringement. 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it.").

Mattel attached a copy of its registration for the "Hot Wheels T–Bird Stocker" to the complaint. Robarb's argues that because its Original Inserts do not depict the T–Bird Stocker, but instead depict other cars that Mattel has not registered, it is entitled to judgment on the pleadings on the copyright claims. (See Def. 12(c) Mtn. Ex. A, B.)

Mattel has registered U.S. Copyright No. VA 445 024 for Hot Wheels packaging that includes the Hot Wheels flame design. While the vehicle that appears on the registered packaging is the "T–Bird Stocker" attached to the complaint, Robarb's display depicted the "Hot Wheels" flame design with a Mattel vehicle other than the "T–Bird Stocker." Robarb's use of the registered flame in a design that is sub-stantially similar to Mattel's registered packaging constitutes the production of a derivative work. *See* 17 U.S.C. § 101 (A "derivative work" is a work based upon one or more preexisting works, such as a ... reproduction ... or any other form in which a work may be recast, transformed, or adapted.); *cf. Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.,* 150 F.3d 132, 143 n. 9 (2d Cir.1998) ("Indeed, if the secondary work sufficiently transforms the expression of the original work such that the two works cease to be substantially similar, then the secondary work is not a derivative work and, for that matter, does not infringe the copyright of the original work.").

As such, Mattel may sustain a copyright infringement work against Robarb's for producing a derivative work using Mattel's flame design in a substantially similar format without Mattel's authorization. Although the Second Circuit has apparently not directly addressed this question, it has faced a similar situation. In *Streetwise Maps*, the owner of a registered 1998 street map that had been derived from an unregistered 1984 map filed a copyright infringement action against a company that copied the 1984 map. The Court held that the owner of a copyrighted derivative work based on an unregistered underlying work could maintain an infringement cause of action against a defendant who reproduced the pre-existing work without authorization. 159 F.3d at 746. Although unregistered, the preexisting work was deemed worthy of protection because elements of it were incorporated into the registered derivative work.

The same rationale applies here to allow Mattel to sustain Counts 5 and 6. Robarb's use of the Mattel flame, a distinctive and recognizable element of Mattel's registered copyright, in a substantially similar derivative work, gives Mattel a cause of

action pursuant to 17 U.S.C. §§ 411, 506(b) (1994). *See also Montgomery v. Noga,* 168 F.3d 1282, 1293 (11th Cir.1999) ("[T]he owner of a registered underlying work that is part of an unregistered derivative work should be able to maintain a copyright infringement suit against a defendant who reproduces the derivative work—and thus the underlying work contained therein—without authorization.") (citing 2 Nimmer on Copyrights, § 7.16(b)(2)); *United States v. The Washington Mint, LLC,* 115 F.Supp.2d 1089, 1099 (D.Minn.2000) ("[C]ourts in other jurisdictions uniformly appear to agree that copying a derivative work may give rise to liability based upon copyright ownership in the original work from which it is derived.").

Defendants' motion for judgment on the pleadings on Counts Five and Six is denied.

### IV. *Rule 30(d) Motion*

■ Finally, the defendants seek an order (1) requiring Mattel to produce its witness to respond to deposition questions related to their counterclaim; (2) to extend the discovery deadline for sixty days for the limited purpose of conducting discovery relevant to their counterclaims; and (3) to award them attorneys' fees and costs incurred in connection with the discovery motion. Defendants seek this order as a result of plaintiff's counsel's instruction to two Toys 'R Us witnesses not to answer deposition questions pertaining to conversations they had with Mattel employees about removing Robarb's displays from Toys 'R Us store shelves, a matter which defendants contend goes to the heart of their counterclaim of unfair competition and interference with contract and/or business relationships. Due to scheduling problems, the depositions took place on February 19, 2001, merely three days before this motion was filed, and Rule 30(d)(1) allows a party to "instruct a deponent not to answer only when necessary to

preserve a privilege, to enforce a limitation on evidence directed by the Court, or to present a motion under paragraph (3)."

Mattel contends that the questions Robarb's sought to ask were beyond the scope of the "Notice of Deposition." Rule 30 requires that parties seeking to depose an adverse party's witness "shall give reasonable notice in writing." Fed.R.Civ.P. 30(b)(1). Moreover, notice naming a corporation to be deposed,

> may ... describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify... The persons so designated shall testify as to matters known or reasonably available to the organization....

Fed.R.Civ.P. 30(b)(6).

The notice of deposition states that "defendants hereby give notice that they will take the depositions of the representative(s) of Mattel, Inc. with knowledge of: (1) discussions with Toys R' Us regarding Robarb's Collectible Car Displays...." (Def. Rule 30(d)(1) Reply Br. at 1.) As such, Mattel was on notice of the subject matter of the deposition. None of the other Rule 30(d)(1) factors being met, and Mattel having failed to bring a motion to dismiss the counterclaims, Robarb's motion to compel, as well as the motion for reimbursement of reasonable attorneys' fees and costs associated with this motion, are granted.

Given the fact that the Final Pretrial Order has already been filed, and imminent scheduling of trial, it is hereby ordered that the deposition shall take place within twenty days of the date this opinion is filed.

*Conclusion*

For the foregoing reasons, defendant's motions for transfer of venue, dismissal for forum non conveniens, and judgment on the pleadings on the copyright infringement claims are denied, and their motions for partial summary judgment on the issue of trademark infringement damages and to compel deposition testimony are granted. Submit accounting of attorneys' fees and costs associated with the motion to compel on notice.

It is so ordered.